UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OYOMA ASINOR, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>   *Defendants*. | Civil Action No. 1:21-cv-02158-APM |

**DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

Defendants District of Columbia, Robert Glover, and Shawn Caldwell move under Rule 12(b)(6) to dismiss Claims 1, 2, and 4 of Plaintiffs' Amended Complaint [10]. The grounds supporting dismissal of these claims are set forth in the Memorandum of Points and Authorities accompanying this Motion. A proposed order is also included. Because this Motion is dispositive, the District Defendants have not sought Plaintiffs' consent. *See* LCvR 7(m).

Date: October 22, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Acting Chief, Section III, Civil Litigation Division
PHILIP A. MEDLEY [1010307]
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
Phone: (202) 442-9774

Email:  matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia, Robert Glover, and Shawn Caldwell*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OYOMA ASINOR, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants.* | Civil Action No. 1:21-cv-02158-APM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT**

Plaintiffs Oyoma Asinor and Bryan Dozier filed this lawsuit on August 12, 2021, alleging an array of common law and constitutional violations arising out of their interactions with the Metropolitan Police Department (MPD) in the area of Lafayette Square Park between August 29 and 31, 2020.  After amending their pleadings shortly after filing suit, Plaintiffs now take aim at three named defendants—the District, MPD Commander Robert Glover, and MPD Officer Shawn Caldwell—and, as relevant to this Motion, allege causes of action directly under the First Amendment Assemblies Act, D.C. Code § 5-331.01, *et seq.* (FAAA), and the Fourth Amendment to the U.S. Constitution via 42 U.S.C. § 1983.  Unfortunately for Plaintiffs, the FAAA does not support a private right of action, and the specific statutory provisions on which Plaintiffs rely cannot form the basis of negligence per se.  And Plaintiffs failed to plead both a colorable violation of the Fourth Amendment as well as the existence of a municipal custom or policy that would make their constitutional claim actionable against the District.  For these reasons, discussed in detail below, the Court should dismiss Claims 1, 2, and 4 of the Amended Complaint.

## BACKGROUND

**I.      Factual Background**

August 29 – 31, 2020 brought a spate of protests and civil unrest to the District of Columbia, largely in the area immediately north of Lafayette Square Park.  *See generally*, Am. Comp.  Plaintiffs Oyoma Asinor and Bryan Dozier—both District residents who self-identify as "photojournalists," *id.* ¶¶ 7-8—were among the numerous individuals who participated in these activities, *see id.* ¶¶ 18-68.  Specifically, according to the Amended Complaint, during the evening hours of August 29, 2020, both Plaintiffs traveled for approximately four hours with a "group of demonstrators" through "various neighbors in the District," allegedly taking photographs "to document what occurred," *id.* ¶ 22, before arriving around 11:00 p.m. at the intersection of 16th and H Streets NW.  *Id.* ¶¶ 21-24.  At that approximate time and location, Plaintiffs claim to have encountered a "large police presence," consisting of MPD officers stationed behind "concrete barricades" on the east side of 16th Street NW and north side of H Street NW, in front of St. John's Episcopal Church.  *See id.* ¶¶ 25-27, 28 ("annotated map").  Around the same time, a "large group of protestors" apparently stood "near" the barricades to "express," in various ways, "their outrage with the state of policing in America."  *Id.* ¶ 29.

Soon after Plaintiffs' arrival at 16th and H Streets NW, the scene became disorderly.  Plaintiffs recount at least two physical altercations, observed by them personally, between "protestor[s]" or "demonstrator[s]" and the police, *see id.* ¶¶ 35, 55, and by 11:20 p.m., at least one individual had been arrested, *id.* ¶ 31, although Plaintiffs do not indicate on what charges.  Some unspecified (but presumably short) time after things became unruly, and "as the protestors expressed their frustrations with [the] MPD officers' actions," *id.* ¶ 37, the officers allegedly deployed several less-lethal crowd control munitions at or in the vicinity of the "protestors," *id.* ¶¶ 32-64.  On Plaintiffs' account, the munitions included two "gas or smoke" cannisters

allegedly released in the vicinity of Plaintiff Dozier by Officers John Doe 1 and John Doe 2, *id.* ¶¶ 37-44, a "liquid containing chemical irritant" allegedly sprayed in Plaintiff Asinor's direction by Defendant Caldwell, *id.* ¶ 57, and a series of "stun grenades" allegedly tossed by Officer John Doe 3, *id.* ¶¶ 59-60.  Plaintiffs also describe an alleged physical encounter between Dozier and Defendant Glover, during which Commander Glover allegedly forced Dozier—"grabbed," "lifted," and "pushed him," *id.* ¶ 45—closer to the aforementioned "gas or smoke" than he otherwise would have been.  *See id.* ¶¶ 45-46.  Eventually, both Plaintiffs were able to "fle[e] the scene," returning to the safety of their respective apartments.  *Id.* ¶ 66.

Only Plaintiff Asinor returned the next night.  *Id.* ¶ 67.  Thin on relevant details, the Amended Complaint does not indicate what time Asinor arrived downtown on August 30, 2020, or with whom, nor does it explain what—specifically—Asinor and the "group of demonstrators" gathered "at or near Black Lives Matter Plaza" were up to prior to encountering MPD personnel at that location.  *See id.* ¶¶ 67-68.  Whatever the circumstances, Asinor was arrested shortly after midnight on charges the Amended Complaint also fails to enumerate.  *Id.* ¶ 69.[1]  Plaintiffs contend that Asinor's property—his camera, cellphone, and the goggles he wore that night—were taken by MPD incident to his arrest and were not returned to him when he was released in the early morning hours of August 31.  *See id.* ¶¶ 68, 70-71.  In fact, at the time of his release, Asinor apparently inquired about his effects and was told by MPD that they were being kept as evidence.  *Id.* ¶ 72.  The District did not prosecute Asinor in connection with his arrest and ultimately returned his belongings about a year later, on August 3, 2021.  *Id.* ¶¶ 71-72, 75.

---

[1]  Plaintiffs original pleading advanced a claim of false arrest on Asinor's behalf, *see* Compl. [1] ¶¶ 159-162, but the day after receiving Asinor's arrest report in discovery, Plaintiffs amended the Complaint to exclude that claim (as well as the constitutional equivalent, *see id.* ¶¶ 156-158.  Despite abandoning Asinor's false arrest claim, Plaintiffs continue to allege that Asinor "was not violating any laws" on August 30 – 31, 2020.  Am. Compl. ¶ 69.

**II.     Procedural History**

Plaintiffs filed suit in this Court on August 12, 2021, initially naming as defendants the District as well as eight John and Jane "Doe" law enforcement officers—all MPD employees allegedly involved, in various ways, in the police response downtown on August 29 – 31, 2020. *See generally* Compl. [1].  About two weeks later, Plaintiffs moved (unopposed) [7] for leave to serve four interrogatories and one request for production of documents on the District, collectively designed to determine the identity of the "Doe" defendants named in the Complaint. The Court granted that request on August 24 [8], and the District thereafter complied with the Court's Order, responding to Plaintiff's early discovery requests on August 27.  The day after receiving the District's responses, Plaintiff filed the Amended Complaint [10], substituting Commander Glover and Officer Caldwell for two of their seven "Doe" defendants, dropping Plaintiff Asinor's claims alleging false arrest and/or imprisonment (formerly Claims 4 and 5, Compl. ¶¶ 156-162), and adding a constitutional challenge to the District's retention of Asinor's belongings after his release from MPD custody (Claim 4, Am. Compl. ¶¶ 124-126).  All named defendants were served electronically as of September 17, 2021.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the factual allegations of the complaint must plausibly "raise a right to relief above the speculative level, on the assumption that all the allegations . . . are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

In making this assessment, courts may accept only[2] *well-pleaded* factual allegations; conclusory allegations and legal conclusions are not entitled to an assumption of veracity. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79. Ultimately, if a complaint fails to "set forth information to suggest that there is some recognized legal theory upon which relief may be granted," it must be dismissed. *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984).

## ARGUMENT

I. **The Court Should Dismiss Plaintiffs' Negligence Per Se Claim—Claim 1 of the Amended Complaint—Because the Cited Provisions of the FAAA Do Not Impose "Specific" Duties Sufficient to Establish a Standard of Care; Alternatively, Claim 1 Cannot Proceed Against Defendants Glover and Caldwell Because the FAAA Imposes No Duties Whatsoever on Them.**

Claim 1 of the Amended Complaint purports to state a cause of action of negligence per se against the District, Commander Glover, Officer Caldwell, and John Does 1 – 3, relating to MPD's alleged uses of crowd control munitions on August 29, 2020. *See* Am. Compl. ¶¶ 100-107. In support of Claim 1, Plaintiffs point to two so-called "duties of care" arising under emergency legislation[3] temporarily amending the First Amendment Assemblies Act, D.C. Code § 5-331.01, *et seq.* (FAAA), effective July 22, 2020: "'Chemical irritants shall not be used by MPD to disperse a First Amendment Assembly,'" and "'Less-lethal projectiles shall not be used by MPD to disperse a First Amendment assembly.'" *See* Am. Compl. ¶ 100 (quoting FAAA

---

[2]   In addition to well-pleaded facts, the Court may consider "documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation and quotations omitted).

[3]   The D.C. Council is empowered to pass "emergency legislation" that takes effect immediately (*i.e.*, without passive congressional approval) but expires after 90 days, D.C. Code § 1-204.12, and by its own rules may pass "temporary legislation," which is substantially the same as emergency legislation but is effective for a period of 225 days before expiration, *see Atkinson v. District of Columbia Bd. of Elections and Ethics*, 597 A.2d 863, 865 n.5 (D.C. 1991). The emergency legislation at issue in Plaintiff's Amended Complaint, generally, and Claims 1 and 2, specifically, is the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020, D.C. Act 23-336 (FAAA Amendment Act) at § 121(b).

Amend. Act § 121(b)). Unfortunately for Plaintiffs, neither provision sets forth the kind of specific guidance that is required to form the basis of negligence per se; and, even if either provision arguably does, neither supplies a duty applicable to any *individual*, meaning Claim 1 must be dismissed—at a minimum—as to Defendants Glover and Caldwell.

> **A. The Provisions of the FAAA on which Plaintiffs Base Claim 1 Do Not Impose "Specific" Duties Sufficient to Establish a Standard of Care.**

It is axiomatic that a statute will support a claim for negligence per se "only" if it "imposes specific duties." *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039-40 (D.C. 2014); *see also McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996). Thus, if a statute provides actors with discretion (and does not "outline [ ] standards" or "specific guidelines to govern behavior," *McNeil, supra*) or reverts to a common law standard of reasonable care, it cannot form the basis of negligence per se. *See Night & Day Mgmt.*, 101 A.3d at 1040; *Chadbourne v. Kappaz*, 779 A.2d 293, 296-97 (D.C. 2001) (rejecting negligence per se claim based on statutory provision that "[did] not contain the kind of specific guidelines that would allow on to determine whether the statute has been violated without resorting to a common law reasonable care analysis."); *accord Sibert-Dean v. Wash. Metro. Area Transit Auth.*, 721 F.3d 699, 703-05 (D.C. Cir. 2013); *Joy v. Bell Helicopter Textron*, 999 F.2d 549, 558-59 (D.C. Cir. 1993). That is the core shortcoming in Plaintiff's reliance on the two provisions of the FAAA Amendment Act incorporated into Claim 1: Although they are both express in providing a general standard (*i.e.*, "MPD shall . . ."), both apply, by their terms, only to policing "First Amendment assembl[ies]," and contain no specific guidelines to govern the determination of whether a particular gathering of persons qualifies. *See* FAAA Amend. Act. § 121(b).

To be sure, not every crowd gathered in the District is a "First Amendment assembly" under the meaning of the Act; a public gathering is disqualified if it is not "for the purpose of persons expressing . . . views," D.C. Code § 5-331.02(1), or not "peaceful," *id.* § 5-331.03,

6

among others. And there is of course a fine line between a "peaceful" assembly "for the purpose of [ ] expressing . . . views," *see id.*, and a "riot," for example, as that term is defined under District of Columbia criminal law, D.C. Code § 1322(a) ("A riot in the District of Columbia is a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons."). *See e.g., Carr v. District of Columbia*, 587 F.3d 401, 408-09 (D.C. Cir. 2009) (discussing circumstances in which law enforcement would have probable cause to arrest en masse a group of "marchers" or "protestors" engaged in riotous behavior). Thus, whether MPD believes that an unruly crowd constitutes a "First Amendment assembly," or conversely, a riotous mob under the meaning of D.C. Code § 1322(a)—at least one potential, threshold inquiry to the application of Plaintiff's provisions of the FAAA Amendment Act—is an inquiry loaded with discretionary elements ultimately turning on the reasonableness of law enforcement's assessment of specific factual circumstances: Whether, for example, a particular public gathering is definitionally a "demonstration, rally, [etc.]," D.C. Code § 5-331.02(1), or "public disturbance," *id.* § 22-1322(a); and whether the assemblage is "for the purpose of [ ] expressing [ ] views," *id.* § 5-331.02(1), or to "damage or injur[e] [ ] property or persons," *id.* § 22-1322(a), among others. In fact, there is no way to evaluate whether MPD violated either provision of the FAAA Amendment Act referenced in Claim 1, in the context of any particular public gathering, without resorting to general common law standards of reasonable behavior and probable cause— inquiries that are rife with "factual and practical considerations" for which the Act provides no guiding principles. *Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, however, we deal with probabilities. These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."); *accord Thomas v. Kettler*, 632 A.2d 725, 728-29 n.8 (D.C. 1993) (regulation

requiring that "debris and other loose materials shall not be allowed on or under stairways" and "slippery conditions on stairways shall be eliminated as soon as possible" did not differ significantly from the relevant common law standard).

Notably, ruling on motions to dismiss in *Horse v. District of Columbia*, No. 17-cv-1216 (ABJ) and *Schultz v. District of Columbia*, 18-cv-0120 (ABJ), Judge Berman Jackson rejected a negligence per se claim purporting to rely on a different provision of the FAAA—D.C. Code §5-331.08—in part because the provision resorted to "general terms," including, as immediately relevant, "'probable cause to believe[.]'" *See* Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. at 31:22-33:1. Explaining the result, Judge Berman Jackson noted that "[w]hether the officers believe that a significant number or percentage of the people in the area committed unlawful acts turns on the inquiry regarding the reasonableness of their belief and actions and what a reasonable person considers to be a significant number[, and] the law [did not] set out the kind of specific guidelines that would allow one to determine whether the statute ha[d] been violated without resorting to a common law reasonable care analysis[.]" *Id.* at 32:16-25. Precisely the same rationale applies here—as explained—and justifies dismissal of Claim 1 with prejudice.

### B. By Its Terms, the FAAA Extends Obligations to "MPD," Not Any Individual MPD Employee.

Even if the Court finds that the two provisions of the FAAA Amendment Act incorporated into Claim 1 are sufficiently precise to form the basis of negligence per se, that claim cannot proceed against Commander Glover or Officer Caldwell because the statute extends no duties whatsoever to those individuals personally. A negligence per se claim may only be maintained against "a person upon whom the statute imposes specific duties." *Night & Day Mgmt.*, 101 A.3d at 1039-40 (citation omitted); *McNeil Pharm.*, 686 A.2d at 579 ("The statute must also impose specific duties on the defendant."); *Ginsberg v. Granados*, 963 A.2d 1134, 1141 (D.C. 2009) ("Because the [statute] in no way promotes public safety and imposes no

8

duties on opposing counsel, Ginsberg's negligence per se claim must also fail."). Thus, the District of Columbia Court of Appeals has found that statutes placing burdens on "[a] retail licensee" and "any officer" imposed duties on those specific actors sufficient to hold them to account under a negligence per se theory. *Night & Day Mgmt.*, 101 A.3d at 1039-40; *District of Columbia v. White*, 442 A.2d 159, 163-64 & n.12 (D.C. 1982); *see also Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 152-53 (D.D.C. 2017) (discussing D.C. Code § 5-125.03, which prohibited use of chokeholds by "any police officer"), *appeal dismissed*, No. 17-7074, 2017 WL 5157752 (D.C. Cir., Oct. 31, 2017). Unlike these provisions, however, the portions of the FAAA Amendment Act on which Plaintiffs rely impose no duties whatsoever on any individuals: By their terms, they refer to "MPD," generally, *see* FAAA Amend. Act. § 121(b), not "MPD officers," "commanding officers," D.C. Code § 5-331.16(b)(3), or the like. Because any duty arising under these provisions does not operate as to Glover or Caldwell—or any individual actor, for that matter—Claim 1 should, at a minimum, be dismissed as to them.

## II. The Court Should Dismiss Claim 2 of the Amended Complaint Because the FAAA Does Not Support a Private Right of Action.

Referring to the same provisions of the FAAA Amendment Act cited in Claim 1, Plaintiffs contend in Claim 2 that the District, Commander Glover, Officer Caldwell, and John Does 1 – 3 are liable for "violat[ing their] rights directly under the Act, which [they contend] contains a private right of action." Am. Compl. ¶ 108. The question of whether a statute gives rise to a direct, private right of action is ultimately one of legislative intent. *See Coates v. Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (enumerating factors). And, after thorough review of the legislative record of the FAAA in *Horse v. District of Columbia*, No. 17-cv-1216 (ABJ) and *Schultz v. District of Columbia*, 18-cv-0120 (ABJ), Judge Berman Jackson flatly rejected the notion that the Act was intended to create a private legal remedy. After finding D.C. Code § 5-331.17—the provision quoted by Plaintiffs in the Amended Complaint as evidence of what the

9

D.C. Council "intended," Am. Compl. ¶ 109—was not determinative of legislative intent, Judge Berman Jackson considered the Act's Committee Report, testimony provided in support of the legislation, the overall statutory scheme, as well as a prior District Court decision (*Mahoney, infra*) and concluded:

> The legislative history of the law indicates that the D.C. Council heard various arguments for and against creating a private right of action. There is a [C]ouncil [C]ommittee on the Judiciary [R]eport on [B]ill No. 15-968, dated December 1, 2004, [indicating that d]rafts of a provision creating an explicit private right of action were heard and ultimately rejected, which suggests the [C]ouncil did not intend to make the [A]ct privately enforceable. . . . In *Mahoney v. District of Columbia*, 662 F. Supp. 2d 74 (D.D.C. 2009), the Court [ ] refused to recognize an implied right of action, in a footnote, because the D.C. Council had considered including a private right of action but ultimately rejected it. The [*Mahoney*] Court also considered that a private right of action appeared to be inconsistent with [the] statutory scheme, which provides for direct administrative review of the MPD's denials of and modifications to assembly plan proposals. . . . I agree with the Court in *Mahoney* and find that the legislative intent to create a cause of action cannot be inferred from the language of the statute, the statutory structure, or some other source, and that there is no implied private right of action under the FAAA.

Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. at 23:21-28:5. Judge Berman Jackson's ruling was well-reasoned, as was Judge Huvelle's before hers, *Mahoney*, 662 F. Supp. 2d at 94 n.11, and there is no basis in law or fact to reach a different outcome here. *See Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 165 (D.D.C. 2019) (discussing rules favoring adherence to judicial precedents). Accordingly, Claim 2 of the Amended Complaint should be dismissed with prejudice.

### III. The Court Should Dismiss Plaintiff Asinor's Fourth Amendment Claim Against the District—Claim 4 of the Amended Complaint—Because Plaintiffs' Factual Allegations Do Not Establish Either a Violation of Asinor's Fourth Amendment Rights or a District Custom or Policy that Caused the Alleged Retention of Asinor's Property.

Claim 4 of the Amended Complaint asserts a cause of action under 42 U.S.C. § 1983, against the District *only*, based on the contention that MPD's decision to retain Plaintiff Asinor's belongings—his camera, cellphone, and the goggles he donned at the time of his arrest

on August 30 – 31, 2020—violated his Fourth Amendment right to be free from unreasonable seizure. *See* Am. Compl. ¶¶ 124-125.  42 U.S.C. § 1983 does not allow *respondeat superior* liability, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); rather, a plaintiff alleging a constitutional tort under § 1983 must establish *both* (1) a predicate constitutional violation, and (2) a municipal custom or policy that was the "moving force" behind it, *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Plaintiff Asinor's § 1983 claim falls short in both respects:  The Amended Complaint does not articulate a colorable violation of the Fourth Amendment; and even if it did, Plaintiffs do not supply a basis for the Court to infer that any such violation was caused by municipal custom or policy.

### A. The Retention of Plaintiff Asinor's Property Did Not Violate His Fourth Amendment Rights.

Plaintiff Asinor seems to concede that MPD lawfully seized his property incident to his arrest on August 31, 2020.  *See generally* Am. Compl.  Asinor's gripe is that MPD *retained* the property beyond the time that it was reasonable to do so.  *See id.* ¶ 124.  But the question of whether and under what circumstances property lawfully seized should be returned to its owner is properly analyzed under constitutional provisions other than the Fourth Amendment.  *See e.g.*, *Bennett v. Dutchess County*, 832 Fed. Appx. 58, 59 (2d Cir. 2020) (noting that an unlawful retention of property lawfully seized should be analyzed as a due process claim, not a Fourth Amendment claim); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) (same); *Lee v. City of Chicago*, 330 F.3d 456, 465–66 and n.5 (7th Cir. 2003) (noting that an unlawful retention of evidence might be more properly analyzed as a claim of taking without just compensation).[4]  Fundamentally, the Fourth Amendment protects different interests

---

[4]     In the Amended Complaint, Plaintiff Asinor cites *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019), in which another court in this jurisdiction analyzes the question of property retention under the Fourth Amendment "reasonableness" test.  But the court in *Smith*

11

than those advanced by Plaintiff Asinor here: "The evil of an unreasonable search or seizure is that it invades privacy[.]" *Martin v. Marinez*, 934 F.3d 594, 601 (7th Cir. 2019) (quoting *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)). If Plaintiff Asinor's privacy was invaded in any sense in this case, it was at the time his property was seized, an invasion that Plaintiff does not challenge.

Plaintiffs cite *United States v. Jacobsen*, 466 U.S. 109, 124 (1984), for the proposition that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." Am. Compl. at ¶ 124. But the issue in *Jacobsen* was that the government seized and then promptly *destroyed* the plaintiff's property, thereby "convert[ing] what had only been a temporary deprivation of possessory interests into a permanent one." *Jacobsen*, 466 U.S. at 124-25; *see United States v. Place*, 462 U.S. 696, 705–10 (1983) (holding that a brief "investigative detention[ ] of personalty" was converted to a seizure when the property was retained for a prolonged period and sent to a different location). In other words, *Jacobsen* and its predecessor *Place* "deal only with the transformation of a momentary, investigative detention into a seizure" and are "ultimately concerned only with the initial loss of that possessory interest and whether the existence of probable cause renders that loss reasonable. [They have] no application after probable cause to seize has been established." *Lee*, 330 F.3d at 464. Here, Plaintiff Asinor does not challenge that his property was lawfully seized at the time he was arrested, and thus, the Fourth Amendment is simply not relevant to the question of the District's retention of his seized property. Accordingly, Claim 4 asserts no plausible violation of the Fourth Amendment and should be dismissed with prejudice.

---

did not specifically discuss the question of whether the Fourth Amendment is the proper constitutional provision.

### B. Even if Plaintiff Asinor's Fourth Amendment Rights Were Violated, He Cannot Show that the Violation Was Caused by an Official Municipal Policy.

Even if the Court finds that Claim 4, if proven, could give rise to a Fourth Amendment violation, dismissal would still be appropriate because the Amended Complaint does not supply facts suggesting that an official municipal policy was to blame. The Circuit has identified four ways official municipal policy can be demonstrated: (1) express policy; (2) actions of a final "policymaker"; (3) persistent conduct by non-policymakers (*i.e.* "custom" with force of law); and (4) "deliberate indifference" to a risk of constitutional injury. *Baker*, 326 F.3d at 1306–07 (citations omitted). Each theory has its own "elements," which a § 1983 plaintiff bears the burden of pleading in accordance with *Iqbal*. *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). Additionally, under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Plaintiff Asinor appears to contend that the District is liable under the third municipal liability theory—that his Fourth Amendment rights were violated pursuant to a custom of retaining arrestees' property. *See* Am. Compl. ¶ 83. To establish municipal policy arising from custom, a § 1983 plaintiff bears the burden of putting forth "evidence that the municipality's employees engaged in a persistent or regular pattern of conduct that gave rise to the alleged constitutional violations." *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (citing *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)). The standard is not an easy one to satisfy: The plaintiff must, in effect, plead past events involving government actions that are *prima facie* identical to the alleged wrongdoing underlying her claim. *See e.g.*, *Egudu*, 72 F. Supp. 3d at 41 (report "analyz[ing] data related to disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show policy or custom of "violat[ing] an

13

individual's free speech right or the right to be free from an unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133-34 (D.D.C. 2011) (report could not evidence municipal custom where "plaintiff was not arrested for the offense examined in the report"); *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 38 (D.D.C. 2010) (plaintiff's allegations of six separate instances of unlawful public strip searches within two years involving numerous officers were sufficient to state a claim of a municipal custom). Accordingly, Claim 4 is not actionable unless it is based on factual allegations showing instances of identical alleged wrongdoing—*i.e.*, examples of the District retaining the property of arrestees after it was reasonable to do so.

The eight "[e]xamples of prolonged retentions" referenced in the Amended Complaint fall well short. Am. Compl. ¶ 85. Plaintiffs' "examples" are as follows: (1) cell phones belonging to approximately 40 arrestees seized on August 13, 2020 and retained to the present (with the exception of three that were returned in the "spring or summer of 2021") even though all but one of the arrestees was "no papered" the day after the arrests; (2) a cell phone and clothing from a robbery suspect seized in February 2020 and returned 15 months after the suspect pleaded guilty; (3) a cell phone seized from a robbery suspect in June 2020 and retained to the present, after a trial in which the cell phone was not introduced as evidence; (4) two cell phones seized from a theft suspect in November 2019 and returned eight months later; (5) a cell phone seized at an unknown date from a suspect charged in November 2020 with unauthorized use of a vehicle and retained to the present even though "the government has agreed that the cell phone should be released"; (6) two cell phones seized in May 2021 from an individual and retained to the present even though the individual was "no papered"; (7) a cell phone seized from an individual in October 2015 and returned in October 2019 even though the charges against the individual were dismissed in March 2018; and (8) cell phones seized from "all or

nearly all" of more than 200 individuals arrested on January 20, 2017 and returned "at least eight months" later even though "most" of the criminal charges were dropped. *See id.* The Amended Complaint generically describes all these seizures as "prolonged," *id.* but the Fourth Amendment protects against *unreasonable* seizures, not "prolonged" seizures. And if—as Plaintiff Asinor suggests over Defendants' objection—*Jacobsen* stands for the proposition that the retention of property lawfully seized could at some point become reasonable, it is surely the case that there is no bright-line temporal rule about when a seizure becomes unreasonable. *Cf. Jacobsen*, 466 U.S. 109. In such a paradigm, the facts of one case may render an 18-month seizure reasonable, whereas the facts of another may render a one-day seizure unreasonable. Here, Plaintiff fails to plead facts indicating that MPD has a municipal custom of retaining the property of arrestees past the point when it is constitutionally reasonable to do so. "[W]ithout some further factual enhancement," *Iqbal*, 556 U.S. at 678, there is simply no way to determine whether any of the events to which Plaintiff Asinor refers are relevant to his claim of municipal liability based on custom. *Cf. Blue*, 811 F.3d at 20 (requiring § 1983 plaintiff to plead "elements" of municipal liability with "adequate factual support to 'state a claim to relief that is plausible onits face,'" as required by *Iqbal*). As such, Claim 4 cannot proceed against the District.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Claims 1, 2, and 4 of Plaintiffs' Amended Complaint.

Date: October 22, 2021

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

15

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Acting Chief, Section III, Civil Litigation Division
PHILIP A. MEDLEY [1010307]
Assistant Attorney General
400 6th Street NW
Washington, D.C. 20001
Phone:  (202) 442-9774
Email:  matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia, Robert Glover, and Shawn Caldwell*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OYOMA ASINOR, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants.* | Civil Action No. 1:21-cv-02158-APM |

### ORDER

Upon consideration of Defendants' Partial Motion to Dismiss the Amended Complaint and the entire record, it is hereby:

**ORDERED** that Defendants' Motion is GRANTED; and it is further

**ORDERED** that Claims 1, 2, and 4 of Plaintiffs' Amended Complaint are DISMISSED.

**SO ORDERED.**

Date: _____

AMIT P. MEHTA
United States District Judge