## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OYOMA ASINOR, *et al.*,

    *Plaintiffs*,

    v.

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants.*

Civil Action No. 1:21-cv-02158-APM

## DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants District of Columbia, Robert Glover, and Shawn Caldwell (collectively, the District Defendants) move under Rule 12(b)(6) to dismiss Claims 1, 2, 4, and 5 of Plaintiffs' Second Amended Complaint [24]. The grounds supporting dismissal of these claims are set forth in the Memorandum of Points and Authorities accompanying this Motion. A proposed order is also included. Because this Motion is dispositive, the District Defendants have not sought Plaintiffs' consent. *See* LCvR 7(m).

Date: January 19, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Helen M. Rave*
MATTHEW R. BLECHER [1012957]
Acting Chief, Section III, Civil Litigation Division
PHILIP A. MEDLEY [1010307]

HELEN M. RAVE[*]
Assistant Attorneys General
400 6th Street NW
Washington, D.C. 20001
Phone:  (202) 442-9774
Email:  matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia,
Robert Glover, and Shawn Caldwell*

---

[*]     Admitted to practice only in the State of New York.  Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR83.2(f) and D.C. Court of Appeals Rule 49(c)(4).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| OYOMA ASINOR, *et al.*,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:21-cv-02158-APM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**

Plaintiffs Oyoma Asinor and Bryan Dozier filed this lawsuit on August 12, 2021, alleging an array of common law and constitutional violations arising out of their interactions with the Metropolitan Police Department (MPD) in the area of Lafayette Square Park between August 29 and 31, 2020.  After amending their pleadings shortly after filing suit and again on December 1, 2021, Plaintiffs take aim at three named defendants—the District, MPD Commander Robert Glover, and MPD Officer Shawn Caldwell (collectively, the District Defendants)—and, as relevant to this Motion, allege causes of action directly under the First Amendment Assemblies Act, D.C. Code § 5-331.01, *et seq.* (FAAA), and the Fourth and Fifth Amendments to the U.S. Constitution, via 42 U.S.C. § 1983.  Unfortunately for Plaintiffs, the FAAA does not support a private right of action, and the specific statutory provisions on which Plaintiffs rely cannot form the basis of negligence per se.  Additionally, Plaintiffs failed to plead a legally cognizable violation of the Fourth Amendment, a lack of constitutionally inadequate process in support of Plaintiff Asinor's Fifth Amendment claim, as well as the existence of a municipal custom or policy that would make either of their substantive constitutional claims actionable against the

District.  For these reasons, discussed in detail below, the Court should dismiss Claims 1, 2, 4 and 5 of the Second Amended Complaint.

## BACKGROUND

### I.    Factual Background

August 29 – 31, 2020 brought a spate of protests and civil unrest to the District of Columbia, largely in the area immediately north of Lafayette Square Park.  *See generally*, 2d Am. Compl.  Plaintiffs Oyoma Asinor and Bryan Dozier—both District residents who self-identify as "photojournalists," *id.* ¶¶ 7-8—were among the numerous individuals who participated in these activities, *see id.* ¶¶ 18-68.  Specifically, according to the Second Amended Complaint, during the evening hours of August 29, 2020, both Plaintiffs traveled for approximately four hours with a "group of demonstrators" through "various neighbors in the District," allegedly taking photographs "to document what occurred," *id.* ¶ 22, before arriving around 11:00 p.m. at the intersection of 16th and H Streets NW.  *Id.* ¶¶ 21-24.  At that approximate time and location, Plaintiffs claim to have encountered a "large police presence," consisting of MPD officers stationed behind "concrete barricades" on the east side of 16th Street NW and north side of H Street NW, in front of St. John's Episcopal Church.  *See id.* ¶¶ 25-27, 28 ("annotated map").  Around the same time, a "large group of protestors" apparently stood "near" the barricades to "express," in various ways, "their outrage with the state of policing in America."  *Id.* ¶ 29.

Soon after Plaintiffs' arrival at 16th and H Streets NW, the scene became disorderly.  Plaintiffs recount at least two physical altercations, observed by them personally, between "protestor[s]" or "demonstrator[s]" and the police, *see id.* ¶¶ 35, 55, and by 11:20 p.m., at least one individual had been arrested, *id.* ¶ 31, although Plaintiffs do not indicate on what charges.  Some unspecified (but presumably short) time after things became unruly, and "as the protestors

expressed their frustrations with [the] MPD officers' actions," *id.* ¶ 37, the officers allegedly deployed several less-lethal crowd control munitions at or in the vicinity of the "protestors," *id.* ¶¶ 32-64.  On Plaintiffs' account, the munitions included two "gas or smoke" cannisters allegedly released in the vicinity of Plaintiff Dozier by Officers John Doe 1 and John Doe 2, *id.* ¶¶ 37-44, a "liquid containing chemical irritant" allegedly sprayed in Plaintiff Asinor's direction by Defendant Caldwell, *id.* ¶ 57, and a series of "stun grenades" allegedly tossed by Officer John Doe 3, *id.* ¶¶ 59-60.  Plaintiffs also describe an alleged physical encounter between Dozier and Defendant Glover, during which Commander Glover allegedly forced Dozier—"grabbed," "lifted," and "pushed him," *id.* ¶ 45—closer to the aforementioned "gas or smoke" than he otherwise would have been.  *See id.* ¶¶ 45-46.  Eventually, both Plaintiffs were able to "fle[e] the scene," returning to the safety of their respective apartments.  *Id.* ¶ 66.

Only Plaintiff Asinor returned the next night.  *Id.* ¶ 67.  Thin on relevant details, the Second Amended Complaint does not indicate what time Asinor arrived downtown on August 30, 2020, or with whom, nor does it explain what—specifically—Asinor and the "group of demonstrators" gathered "at or near Black Lives Matter Plaza" were up to prior to encountering MPD personnel at that location.  *See id.* ¶¶ 67-68.  Whatever the circumstances, Asinor was arrested shortly after midnight on charges the Second Amended Complaint also fails to enumerate.  *Id.* ¶ 69.[1]  Plaintiffs contend that Asinor's property—his camera, cellphone, and the goggles he wore that night—were taken by MPD incident to his arrest and were not returned to him when he was released in the early morning hours of August 31.  *See id.* ¶¶ 68, 70-72.  In fact, at the time of his release, Asinor apparently inquired about his effects and was told by MPD that

---

[1]     Plaintiffs' original pleading advanced a claim of false arrest on Asinor's behalf, *see* Compl. [1] ¶¶ 159-162, but the day after receiving Asinor's arrest report in discovery, Plaintiffs amended the Complaint to exclude that claim as well as the constitutional equivalent, *see id.* ¶¶ 156-158.  Despite abandoning Asinor's false arrest claim, Plaintiffs continue to allege that Asinor "was not violating any laws" on August 30 – 31, 2020.  2d Am. Compl. ¶ 69.

they were being kept as evidence. *Id.* ¶ 72.  The District did not prosecute Asinor in connection with his arrest and ultimately returned his belongings about a year later, on August 3, 2021. *Id.* ¶¶ 71-72, 75.

## II.   Procedural History

Plaintiffs filed suit in this Court on August 12, 2021, initially naming as defendants the District as well as eight John and Jane "Doe" law enforcement officers—all MPD employees allegedly involved, in various ways, in the police response downtown on August 29 – 31, 2020. *See generally* Compl. [1].  About two weeks later, Plaintiffs moved (unopposed) [7] for leave to serve four interrogatories and one request for production of documents on the District, collectively designed to determine the identity of the "Doe" defendants named in the Complaint. The Court granted that request on August 24 [8], and the District thereafter complied with the Court's Order, responding to Plaintiff's early discovery requests on August 27.  The day after receiving the District's responses, Plaintiff filed the Amended Complaint [10], substituting Commander Glover and Officer Caldwell for two of their seven "Doe" defendants, dropping Plaintiff Asinor's claims alleging false arrest and/or imprisonment (formerly Claims 4 and 5, Compl. ¶¶ 156-162), and adding a constitutional challenge to the District's retention of Asinor's belongings after his release from MPD custody (Claim 4, Am. Compl. ¶¶ 124-126).  All named defendants were served electronically as of September 17, 2021.

Thereafter, on October 22, 2021, the District Defendants filed a partial motion to dismiss the amended complaint [18].  Plaintiffs responded on November 19, filing—in lieu of an opposition—an unopposed motion for leave to amend their pleadings a second time [21].  The Second Amended Complaint, which the Court accepted by minute order dated December 1, 2021, is based on substantially the same factual circumstances as the first and second iterations but adds a sixth claim (new Claim 5) alleging a procedural due process violation arising out of

MPD's confiscation and retention of Plaintiff Asinor's personal effects.  *See* 2d Am. Compl. ¶¶ 131-133.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal when a complaint fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, the factual allegations of the complaint must plausibly "raise a right to relief above the speculative level, on the assumption that all the allegations . . . are true."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").  In making this assessment, courts may accept only[2] *well-pleaded* factual allegations; conclusory allegations and legal conclusions are not entitled to an assumption of veracity.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-79.  Ultimately, if a complaint fails to "set forth information to suggest that there is some recognized legal theory upon which relief may be granted," it must be dismissed.  *District of Columbia v. Air Fla., Inc.,* 750 F.2d 1077, 1078 (D.C. Cir. 1984).

## ARGUMENT

I.  **The Court Should Dismiss Plaintiffs' Negligence Per Se Claim—Claim 1 of the Second Amended Complaint—Because the Cited Provisions of the FAAA Do Not Impose "Specific" Duties Sufficient to Establish a Standard of Care; Alternatively, Claim 1 Cannot Proceed Against Defendants Glover and Caldwell Because the FAAA Imposes No Duties Whatsoever on Them.**

Claim 1 of the Second Amended Complaint purports to state a cause of action of negligence per se against the District, Commander Glover, Officer Caldwell, and John Does 1 – 3, relating to MPD's alleged uses of crowd control munitions on August 29, 2020.  *See* 2d Am.

---

2    In addition to well-pleaded facts, the Court may consider "documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 183 (D.C. Cir. 2006) (citation and quotations omitted).

Compl. ¶¶ 104-111.  In support of Claim 1, Plaintiffs point to two so-called "duties of care"

arising under emergency legislation[3] temporarily amending the First Amendment Assemblies

Act, D.C. Code § 5-331.01, *et seq.* (FAAA), effective July 22, 2020:  "'Chemical irritants shall

not be used by MPD to disperse a First Amendment Assembly,'" and "'Less-lethal projectiles

shall not be used by MPD to disperse a First Amendment assembly.'"  *See* 2d Am. Compl. ¶ 104

(quoting FAAA Amend. Act § 121(b)).  Unfortunately for Plaintiffs, neither provision sets forth

the kind of specific guidance that is required to form the basis of negligence per se; and, even if

either provision arguably does, neither supplies a duty applicable to any *individual*, meaning

Claim 1 must be dismissed—at a minimum—as to Defendants Glover and Caldwell.[4]

## A. <u>The Provisions of the FAAA on which Plaintiffs Base Claim 1 Do Not Impose "Specific" Duties Sufficient to Establish a Standard of Care.</u>

It is axiomatic that a statute will support a claim for negligence per se "only" if it

"imposes specific duties."  *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039-40 (D.C.

2014); *see also McNeil Pharm. v. Hawkins*, 686 A.2d 567, 579 (D.C. 1996).  Thus, if a statute

---

[3]     The D.C. Council is empowered to pass "emergency legislation" that takes effect immediately (*i.e.*, without passive congressional approval) but expires after 90 days, D.C. Code § 1-204.12, and by its own rules may pass "temporary legislation," which is substantially the same as emergency legislation but is effective for a period of 225 days before expiration, *see Atkinson v. District of Columbia Bd. of Elections and Ethics*, 597 A.2d 863, 865 n.5 (D.C. 1991).  The emergency legislation at issue in Plaintiff's Second Amended Complaint, generally, and Claims 1 and 2, specifically, is the Comprehensive Policing and Justice Reform Second Emergency Amendment Act of 2020, D.C. Act 23-336 (FAAA Amendment Act) at § 121(b).

[4]     Recently, in *Goodwin v. District of Columbia*, Civil Action No. 21-cv-00806, Chief Judge Howell concluded that three provisions of the FAAA—including the FAAA Amendment Act's ban on the use of chemical irritants at First Amendment Assemblies—could serve as the basis of negligence per se.  2022 U.S. Dist. LEXIS 7011, at *36-37 (D.D.C. Jan. 13, 2022). Notably, however, the Chief Judge's opinion did not address the arguments for dismissal of Plaintiff's negligence per se claim presented here (and accepted by the Court in *Horse* and *Schultz, infra*):  Namely, as detailed below, that the threshold determination of whether a gathering constitutes a First Amendment Assembly conveys too much discretion to create a "specific" duty of care for purposes of negligence per se; and, if not, that the FAAA's statutory proscriptions addressed to MPD (*i.e.*, "MPD shall not") cannot be read as extending any such duty to an *individual* District or MPD employee—here, Defendants Glover and Caldwell.

provides actors with discretion (and does not "outline [ ] standards" or "specific guidelines to govern behavior," *McNeil, supra*) or reverts to a common law standard of reasonable care, it cannot form the basis of negligence per se.  *See Night & Day Mgmt.*, 101 A.3d at 1040; *Chadbourne v. Kappaz*, 779 A.2d 293, 296-97 (D.C. 2001) (rejecting negligence per se claim based on statutory provision that "[did] not contain the kind of specific guidelines that would allow on to determine whether the statute has been violated without resorting to a common law reasonable care analysis."); *accord Sibert-Dean v. Wash. Metro. Area Transit Auth.*, 721 F.3d 699, 703-05 (D.C. Cir. 2013); *Joy v. Bell Helicopter Textron*, 999 F.2d 549, 558-59 (D.C. Cir. 1993).  That is the core shortcoming in Plaintiff's reliance on the two provisions of the FAAA Amendment Act incorporated into Claim 1:  Although they are both express in providing a general standard (*i.e.*, "MPD shall . . ."), both apply, by their terms, only to policing "First Amendment assembl[ies]," and contain no specific guidelines to govern the determination of whether a particular gathering of persons qualifies.  *See* FAAA Amend. Act. § 121(b).

To be sure, not every crowd gathered in the District is a "First Amendment assembly" under the meaning of the Act; a public gathering is disqualified if it is not "for the purpose of persons expressing . . . views," D.C. Code § 5-331.02(1), or not "peaceful," *id.* § 5-331.03, among others.  And there is of course a fine line between a "peaceful" assembly "for the purpose of [ ] expressing . . . views," *see id.*, and a "riot," for example, as that term is defined under District of Columbia criminal law, D.C. Code § 1322(a) ("A riot in the District of Columbia is a public disturbance involving an assemblage of 5 or more persons which by tumultuous and violent conduct or the threat thereof creates grave danger of damage or injury to property or persons.").  *See e.g., Carr v. District of Columbia*, 587 F.3d 401, 408-09 (D.C. Cir. 2009) (discussing circumstances in which law enforcement would have probable cause to arrest en masse a group of "marchers" or "protestors" engaged in riotous behavior).  Thus, whether MPD

believes that an unruly crowd constitutes a "First Amendment assembly," or conversely, a riotous mob under the meaning of D.C. Code § 1322(a)—at least one potential, threshold inquiry to the application of Plaintiff's provisions of the FAAA Amendment Act—is an inquiry loaded with discretionary elements ultimately turning on the reasonableness of law enforcement's assessment of specific factual circumstances:  Whether, for example, a particular public gathering is definitionally a "demonstration, rally, [etc.]," D.C. Code § 5-331.02(1), or "public disturbance," *id.* § 22-1322(a); and whether the assemblage is "for the purpose of [ ] expressing [ ] views," *id.* § 5-331.02(1), or to "damage or injur[e] [ ] property or persons," *id.* § 22-1322(a), among others.  In fact, there is no way to evaluate whether MPD violated either provision of the FAAA Amendment Act referenced in Claim 1, in the context of any particular public gathering, without resorting to general common law standards of reasonable behavior and probable cause— inquiries that are rife with "factual and practical considerations" for which the Act provides no guiding principles.  *Brinegar v. United States*, 338 U.S. 160, 175 (1949) ("In dealing with probable cause, however, we deal with probabilities.  These are not technical, they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."); *accord Thomas v. Kettler*, 632 A.2d 725, 728-29 n.8 (D.C. 1993) (regulation requiring that "debris and other loose materials shall not be allowed on or under stairways" and "slippery conditions on stairways shall be eliminated as soon as possible" did not differ significantly from the relevant common law standard).

Notably, ruling on motions to dismiss in *Horse v. District of Columbia*, No. 17-cv-1216 (ABJ) and *Schultz v. District of Columbia*, 18-cv-0120 (ABJ), Judge Berman Jackson rejected a negligence per se claim purporting to rely on a different provision of the FAAA—D.C. Code §5-331.08—in part because the provision resorted to "general terms," including, as immediately relevant, "'probable cause to believe[.]'"  *See* Defs.' [Ex. 1], Trans. of Sept. 27, 2019 Status

Conf. at 31:22-33:1.  Explaining the result, Judge Berman Jackson noted that "[w]hether the officers believe that a significant number or percentage of the people in the area committed unlawful acts turns on the inquiry regarding the reasonableness of their belief and actions and what a reasonable person considers to be a significant number[, and] the law [did not] set out the kind of specific guidelines that would allow one to determine whether the statute ha[d] been violated without resorting to a common law reasonable care analysis[.]"  *Id.* at 32:16-25. Precisely the same rationale applies here—as explained—and justifies dismissal of Claim 1 with prejudice.

**B.  <u>By Its Terms, the FAAA Extends Obligations to "MPD," Not Any Individual MPD Employee.</u>**

Even if the Court finds that the two provisions of the FAAA Amendment Act incorporated into Claim 1 are sufficiently precise to form the basis of negligence per se, that claim cannot proceed against Commander Glover or Officer Caldwell because the statute extends no duties whatsoever to those individuals personally.  A negligence per se claim may only be maintained against "a person upon whom the statute imposes specific duties."  *Night & Day Mgmt.*, 101 A.3d at 1039-40 (citation omitted); *McNeil Pharm.*, 686 A.2d at 579 ("The statute must also impose specific duties on the defendant."); *Ginsberg v. Granados*, 963 A.2d 1134, 1141 (D.C. 2009) ("Because the [statute] in no way promotes public safety and imposes no duties on opposing counsel, Ginsberg's negligence per se claim must also fail.").  Thus, the District of Columbia Court of Appeals has found that statutes placing burdens on "[a] retail licensee" and "any officer" imposed duties on those specific actors sufficient to hold them to account under a negligence per se theory.  *Night & Day Mgmt.*, 101 A.3d at 1039-40; *District of Columbia v. White*, 442 A.2d 159, 163-64 & n.12 (D.C. 1982); *see also Ingram v. Shipman-Meyer*, 241 F. Supp. 3d 124, 152-53 (D.D.C. 2017) (discussing D.C. Code § 5-125.03, which prohibited use of chokeholds by "any police officer"), *appeal dismissed*, No. 17-7074, 2017 WL

5157752 (D.C. Cir., Oct. 31, 2017).  Unlike these provisions, however, the portions of the FAAA

Amendment Act on which Plaintiffs rely impose no duties whatsoever on any individuals:  By

their terms, they refer to "MPD," generally, *see* FAAA Amend. Act. § 121(b), not "MPD

officers," "commanding officers," D.C. Code § 5-331.16(b)(3), or the like.  Because any duty

arising under these provisions does not operate as to Glover or Caldwell—or any individual

actor, for that matter—Claim 1 should, at a minimum, be dismissed as to them.

II.     **The Court Should Dismiss Claim 2 of the Second Amended Complaint Because the**
        **FAAA Does Not Support a Private Right of Action.**

        Referring to the same provisions of the FAAA Amendment Act cited in Claim 1,

Plaintiffs contend in Claim 2 that the District, Commander Glover, Officer Caldwell, and John

Does 1 – 3 are liable for "violat[ing their] rights directly under the Act, which [they contend]

contains a private right of action."  2d Am. Compl. ¶ 108.  The question of whether a statute

gives rise to a direct, private right of action is ultimately one of legislative intent.  *See Coates v.*

*Elzie*, 768 A.2d 997, 1001 (D.C. 2001) (enumerating factors).  And, upon thorough review of the

legislative record of the FAAA in *Horse v. District of Columbia*, No. 17-cv-1216 (ABJ) and

*Schultz v. District of Columbia*, 18-cv-0120 (ABJ), Judge Berman Jackson flatly rejected the

notion that the Act was intended to create a private legal remedy.  After finding D.C. Code § 5-

331.17—the provision quoted by Plaintiffs in the Amended Complaint as evidence of what the

D.C. Council "intended," 2d Am. Compl. ¶ 113—was not determinative of legislative intent,

Judge Berman Jackson considered the Act's Committee Report, testimony provided in support of

the legislation, the overall statutory scheme, as well as a prior District Court decision (*Mahoney,*

*infra*) and concluded:

>       The legislative history of the law indicates that the D.C. Council heard various
>       arguments for and against creating a private right of action.  There is a [C]ouncil
>       [C]ommittee on the Judiciary [R]eport on [B]ill No. 15-968, dated December 1,
>       2004, [indicating that d]rafts of a provision creating an explicit private right of
>       action were heard and ultimately rejected, which suggests the [C]ouncil did not

intend to make the [A]ct privately enforceable. . . . In *Mahoney v. District of District of Columbia*, 662 F. Supp. 2d 74 (D.D.C. 2009), the Court [ ] refused to recognize an implied right of action, in a footnote, because the D.C. Council had considered including a private right of action but ultimately rejected it. The [*Mahoney*] Court also considered that a private right of action appeared to be inconsistent with [the] statutory scheme, which provides for direct administrative review of the MPD's denials of and modifications to assembly plan proposals. . . . I agree with the Court in *Mahoney* and find that the legislative intent to create a cause of action cannot be inferred from the language of the statute, the statutory structure, or some other source, and that there is no implied private right of action under the FAAA.

Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. at 23:21-28:5.  Judge Berman

Jackson's ruling was well-reasoned, as was Judge Huvelle's before hers, *Mahoney*, 662

F. Supp. 2d at 94 n.11, and there is no basis in law or fact to reach a different outcome

here.  *See Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 165 (D.D.C. 2019)

(discussing rules favoring adherence to judicial precedents).  Accordingly, Claim 2 of the

Second Amended Complaint should be dismissed with prejudice.

**III.     The Court Should Dismiss Plaintiff Asinor's Fourth and Fifth Amendment Claims Against the District—Claims 4 and 5, Respectively—Because the Second Amended Complaint Does Not Establish a Predicate Violation of Either Amendment or a District Custom or Policy that Caused the Allegedly Unconstitutional Retention of Asinor's Property.**

Claim 4 of the Second Amended Complaint asserts a cause of action under 42 U.S.C. §

1983, against the District *only*, based on the contention that MPD's decision to retain Plaintiff

Asinor's belongings—his camera, cellphone, and the goggles he donned at the time of his arrest

on August 30 – 31, 2020—violated his Fourth Amendment right to be free from unreasonable

seizure.  *See* 2d Am. Compl. ¶¶ 124-125.  Claim 5 relies upon the same factual predicate and

likewise arises under § 1983, but purports to assert a Fifth Amendment procedural due process

violation.  *See id.* ¶¶ 131-132.  Generally, 42 U.S.C. § 1983 does not allow *respondeat superior*

liability, *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); rather, a

plaintiff alleging a constitutional tort under § 1983 must establish *both* (1) a predicate

constitutional violation, and (2) a municipal custom or policy that was the "moving force"

behind it, *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  Plaintiff

Asinor's attempt to proceed under § 1983 falls short in both respects:  The Second Amended

Complaint does not articulate a colorable violation of either the Fourth or Fifth Amendment;

and even if it did, Plaintiffs do not supply a basis for the Court to infer that any such violation

was caused by municipal custom or policy.

### A.  The Second Amended Complaint Does Not Establish a Predicate Constitutional Violation.

#### 1.  The Retention of Plaintiff Asinor's Property Did Not Violate His Fourth Amendment Rights.

Plaintiff Asinor seems to concede that MPD lawfully seized his property incident to his

arrest on August 31, 2020.  *See generally* 2d Am. Compl.  His gripe is that MPD *retained* the

property beyond the time that it was reasonable to do so.  *See id.* ¶ 128.  But the question of

whether and under what circumstances property lawfully seized should be returned to its owner

is appropriately analyzed under constitutional provisions other than the Fourth Amendment.  *See

e.g.*, *Bennett v. Dutchess County*, 832 Fed. Appx. 58, 59 (2d Cir. 2020) (noting that an unlawful

retention of property lawfully seized should be analyzed as a due process claim, not a Fourth

Amendment claim); *Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d

Cir. 2004) (same); *Lee v. City of Chicago*, 330 F.3d 456, 465–66 and n.5 (7th Cir. 2003) (noting

that an unlawful retention of evidence might be more properly analyzed as a claim of taking

without just compensation).[5]  Fundamentally, the Fourth Amendment protects different interests

than those advanced by Plaintiff Asinor here:  "The evil of an unreasonable search or seizure is

that it invades privacy[.]" *Martin v. Marinez*, 934 F.3d 594, 601 (7th Cir. 2019) (quoting *Townes*

---

[5]      In the Second Amended Complaint, Plaintiff Asinor cites *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019) (RCL), in which another judge of this Court analyzed government retention of private property under the Fourth Amendment "reasonableness" test. There, however, Judge Lamberth applied the Fourth Amendment without determining whether it was, in fact, applicable under the circumstances.

*v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999)).  Thus, if Plaintiff Asinor's privacy was invaded in any sense under the circumstances alleged in the Second Amended Complaint, it was at the time his property was seized—an invasion that Plaintiff does not challenge.

Advocating for application of the Fourth Amendment, the Second Amended Complaint refers to *United States v. Jacobsen*, 466 U.S. 109, 124 (1984), for the proposition that "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests."  2d Am. Compl. at ¶ 128.  But the issue in *Jacobsen* was that the government seized and then promptly *destroyed* the plaintiff's property, thereby "convert[ing] what had only been a temporary deprivation of possessory interests into a permanent one."  *Jacobsen*, 466 U.S. at 124-25; *see United States v. Place*, 462 U.S. 696, 705–10 (1983) (holding that a brief "investigative detention[ ] of personalty" was converted to a seizure when the property was retained for a prolonged period and sent to a different location). In other words, *Jacobsen* and its predecessor *Place* "deal only with the transformation of a momentary, investigative detention into a seizure" and are "ultimately concerned only with the initial loss of that possessory interest and whether the existence of probable cause renders that loss reasonable.  [They have] no application after probable cause to seize has been established." *Lee*, 330 F.3d at 464.  Here, Plaintiff Asinor does not contend that his property was unlawfully seized at the time he was arrested, and thus, the Fourth Amendment is simply not relevant to the question of the District's retention of his seized property.  Accordingly, Claim 4 asserts no plausible violation of the Fourth Amendment and should be dismissed with prejudice.

**2.  Plaintiff Asinor Cannot Establish a Violation of His Fifth Amendment Due Process Rights Because He Failed to Avail Himself of an Available and Constitutionally Adequate Process to Secure the Return of His Property.**

In Count 5, Plaintiff Asinor alleges that the District violated his Fifth Amendment rights to due process by failing to provide a procedure for a "no papered" individual to contest a

deprivation of property incident to arrest before a neutral party.  2d Am. Compl. ¶¶ 131-33.

"[T]o make out a violation of [procedural] due process, the plaintiff must show the Government

deprived [him] of a 'liberty or property interest' to which [he] had a 'legitimate claim of

entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally

[in]sufficient.'"  *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't

of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  It is well-established that "a procedural due

process violation cannot have occurred when the governmental actor provides apparently

adequate procedural remedies and the plaintiff has not availed himself of those remedies."

*Chavis v. Garrett*, 419 F. Supp. 3d 24, 38 (D.D.C. 2019) (quoting *Alvin v. Suzuki*, 227 F.3d 107,

116 (3d Cir. 2000)).  As explained immediately below, Plaintiff Asinor failed to allege that he

availed himself of the District's procedural mechanism for arrestees to seek the return of

confiscated property—Superior Court Rule of Criminal Procedure 41(g)—so he has no basis to

challenge that process as constitutionally inadequate.  And even if the Superior Court does not

grant a party's requested relief, Rule 41(g) satisfies the standards for due process set forth in both

*Medina* and *Mathews*.

       i.   Plaintiff Asinor's Procedural Due Process Claim Should Be Dismissed
           Because He Did Not Avail Himself of the Procedures Under Rule 41(g).

As explained above, Plaintiff Asinor alleges in Count 5 that the District violated his

constitutional due process rights by failing to provide a process for individuals whose criminal

charges have been "no papered" to seek the return of their property.  2d Am. Compl. ¶ 132.

Asinor alleges that his counsel is not "aware of any publicly available rule or authority in the

D.C. Code, the D.C. Superior Court Rules of Criminal or Civil Procedure, or other applicable

court rules that prescribes a procedure for this circumstance."  2d Am. Compl. ¶ 91.  Despite this

representation, the Second Amended Complaint further acknowledges that other individuals

whose criminal charges were no papered in the District have pending motions under Superior

Court Rule of Criminal Procedure 41(g) seeking the return of their property. *See* 2d Am. Compl. ¶¶ 90-92. Thus, the gravamen of Count 5 is not that *no process* exists, but that the existing process—Rule 41(g)—is constitutionally inadequate. But the Court need not reach that question here: Rule 41(g) is, according to its plain language and interpretive case law, available to Plaintiff Asinor, and he apparently failed to avail himself of it, meaning he cannot have an actionable due process claim.

To be sure, Rule 41(g) states that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." "Rule 41(g) is a comprehensive scheme that provides a straightforward and adequate remedy—and one which avoids any constitutional deprivation." *Leyland v. Edwards*, 797 F. Supp. 2d 7, 10 (D.D.C. 2011). And, while Plaintiff Asinor suggests that Rule 41(g) does not apply when arrestees are no papered, *see* 2d Am. Compl. ¶¶ 90-92, nothing on the face of Rule 41(g) limits its applicability. The broad scope of Rule 41(g) has been repeatedly addressed in caselaw. For example, in *Cousart v. Metro Transit Police Chief*, the Court held that "[u]nder D.C. Superior Court Rule of Criminal Procedure 41(g), [plaintiff] can move in the Superior Court for the return of property seized as part of a criminal action," including civil actions "for the return of property seized in a case that was 'disposed of by nolle prosequi.'" 101 F. Supp. 3d 27, 28 (D.D.C. 2015) (emphasis added) (citing *Alleyne*, 455 A.2d at 888–89); *accord Alleyne*, 455 A.2d at 888–89 (finding that trial court had jurisdiction to entertain the plaintiffs' motion for return of property after the government "no papered" their criminal cases); *Wilson v. United States*, 424 A.2d 130, 132 (D.C. 1980) (holding that "the Superior Court has jurisdiction after a criminal trial to rule on a motion to return property which had been seized in connection with the prosecution"). Rule 41(g) provides a mechanism for "no papered" individuals to contest the retention of their property

before a neutral decision maker, which is all the process Plaintiff seeks in Count 5.  2d Am. Compl. ¶ 132.

As Rule 41(g) provides Plaintiff Asinor with an available procedural remedy, he cannot advance a due process challenge unless he availed himself of the process—and he does not contend that he did.  Indeed, "[w]here adequate post-deprivation state remedies are available, no cognizable claim for procedural due process can be stated."  *Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 (D.D.C. 2013) (citing *Crawford v. Parron*, 709 F. Supp. 234, 237 (D.D.C. 1986)).  And "[i]f procedures are already in place that provide adequate process but a plaintiff does not utilize those procedures, there is no constitutional violation."  *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 281 (D.D.C. 2007) (citing *Kremer v. Chem. Constr. Co.*, 456 U.S. 461, 485 (1982)); *see, e.g., N.Y. State NOW v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) (holding there cannot be a procedural due process violation where government provides apparently adequate procedural remedies that plaintiff did not utilize); *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate").  That is squarely the circumstances of Count 5:  Although the Second Amended Complaint acknowledges that other individuals whose cases were "no papered" in the District filed Rule 41(g) motions, but nowhere alleges that Plaintiff Asinor himself invoked this procedure.  2d Am. Compl. ¶¶ 90-92.[6]  Because Plaintiff Asinor did

---

[6]     To the extent Asinor suggests there were deficiencies with the procedures other individuals received under Rule 41(g), Asinor lacks standing to challenge the process those individuals received.  *See Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. 2014) ("To establish constitutional standing, plaintiffs 'must have suffered or be imminently threatened with a concrete and particularized injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.'" (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)).  As Asinor never availed himself of the Rule 41(g) procedure, Asinor could not have experienced any particularized injury in fact related to any alleged deficiencies with the Rule 41(g) procedure.

not take advantage of the available state law procedures for the return of his property, he does not state a plausible procedural due process claim, and the Court should dismiss Count 5.

ii.  Rule 41(g) Satisfies All Conceivable Due Process Standards.

Even if Plaintiff Asinor's due process claim survives his failure to avail himself of Rule 41(g), Count 5 should still be dismissed because the process under the Rule is constitutionally adequate.  While procedural due process claims are often analyzed under the three-part *Mathews* balancing test, the U.S. Supreme Court has held that *Mathews* does not control a procedural due process challenge when it involves "assessing the validity of state procedural rules which . . . are part of the criminal process."  *Medina v. California*, 505 U.S. 437, 443 (1992).  Because Rule 41(g) is a state rule of criminal procedure, *Medina* provides the proper framework for assessing the constitutionality of the process afforded by Rule 41(g).  *See Medina*, 505 U.S. at 445–46 ("[B]ecause the States have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area.").  Rule 41(g) satisfies that standard.  And even if the Court were to apply the *Mathews* balancing, Rule 41(g) would survive scrutiny.

a.  Rule 41(g) Satisfies the Requirements of *Medina*.

Under *Medina*, "[a] rule of criminal procedure usually does not violate the Due Process Clause unless it (i) 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or (ii) 'transgresses any recognized principle of 'fundamental fairness' in operation.'"  *Kincaid v. District of Columbia*, 854 F.3d 721, 726 (D.C. Cir. 2017) (quoting *Medina*, 505 U.S. at 445, 448) (applying *Medina* and holding that post-and-forfeit policy did not violate due process); *see also Fox v. District of Columbia*, 851 F. Supp. 2d 20, 33 (D.D.C. 2012) (same).

17

When applying *Medina*, courts "first assess whether" the procedure in question "offends any fundamental 'principle of justice' that is deeply rooted 'in the traditions and conscience of our people.'" *Kincaid*, 854 F.3d at 726 (quoting *Medina*, 505 U.S. at 445).  "Historical practice and, to a lesser extent, contemporary practice are relevant to that inquiry." *Id.*  Here, the seizure of evidence for possible use in a criminal prosecution is a traditional function performed by MPD.  Indeed, the seizure of needed evidence for criminal prosecution is so intertwined with the criminal process that protections for unreasonable seizures are embodied in the Fourth Amendment.  As a procedural mechanism to allow individuals to seek the return of their property, Rule 41(g) does not offend any traditional principle of justice.  Looking to contemporary practice, Rule 41(g) is substantially similar to Federal Rule of Criminal Procedure 41(g), the procedure to seek the return of property seized by the federal government.  Plaintiff has not, and cannot, allege that Rule 41(g) offends a traditional principle of justice.

Courts applying *Medina* next examine whether the rule of criminal procedure at issue "'transgresses any recognized principle of fundamental fairness in operation.'" *Kincaid*, 854 F.3d at 727 (quoting *Medina*, 505 U.S. at 445).  Plaintiff Asinor has not, and cannot, allege that Rule 41(g) violates any principle of fundamental fairness.  Providing a mechanism to allow individuals to seek the return of their property does not violate any principle of fundamental fairness.  *Cf. Kincaid*, 854 F.3d at 727 (providing option to participate in post-and-forfeit procedure does not violate fundamental fairness).

Rule 41(g) expressly provides Plaintiff with the opportunity to challenge the deprivation of his property in D.C. Superior Court.  Because the ability to challenge the deprivation of one's property in state court does not offend any traditional principle of justice or fundamental fairness, Rule 41(g) satisfies *Medina* and Count 5 should be dismissed.

> b. Even If the Court Applies *Mathews*, Plaintiff Asinor Is Not Entitled to Any Additional Procedural Protections.

Count 5 should be dismissed even if the Court applies *Mathews*.  Under that framework, courts weigh three factors to determine what process is sufficient to meet the requirements of the Fifth Amendment: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews*, 424 U.S. at 335.

The District acknowledges that the first *Mathews* factor—the owner's interest in the property—tips in favor of Plaintiff Asinor in light of the role that cell phones play in society today.  However, the remaining factors tip decidedly in favor of the District.

A key consideration under the second *Mathews* factor is "the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.  As discussed above, Rule 41(g) already provides a mechanism for a hearing about the return of seized property. Therefore, Plaintiff Asinor would not benefit from an additional post-seizure procedure to challenge the retention of his property.  In addition, as with all types of property seized for evidence, the likelihood of erroneous deprivation is limited by independent actors making probable cause determinations—"an erroneous deprivation will be detected either by the Court or a jury at or immediately after the criminal trial in an adversary proceeding."  *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 206 (D.D.C. 2011) (determining due process did not require a pretrial hearing to determine whether a third party's vehicles and currency had been validly seized).  Thus, given the low risk of erroneous deprivation, and the minimal value of additional safeguards where Plaintiff could have challenged the seizure of his property by filing a motion under Rule 41(g), the second *Mathews* factor weighs in favor of the District.

The third *Mathews* factor concerns the District's interest in not providing additional procedures.  Given Plaintiff Asinor's failure to identify what procedural protections he is seeking beyond a hearing before a neutral decision-maker, it is impossible for the District to address the proposed additional burden.  However, given the procedural protections already available to individuals like Plaintiff Asinor, any additional protections would impose an undue and unnecessary burden on the District.  Therefore, the third factor weighs heavily in favor of the District.

Even if the Court applies *Mathews* instead of *Medina*, Count 5 still should be dismissed because the retention of property seized from arrested individuals implicates important government interests, and Plaintiff Asinor fails to identify what procedures he is seeking beyond what is already available under Rule 41(g).

### B.  The Second Amended Complaint Does Not Establish That a District Custom or Policy Caused the Alleged Retention of Plaintiff Asinor's Property.

Even if the Court finds that either Claim 4 or Claim 5, if proven, could give rise to a plausible constitutional violation, dismissal would still be appropriate because the Second Amended Complaint does not supply facts suggesting that an official municipal policy was to blame.  The Circuit has identified four ways official municipal policy can be demonstrated: (1) express policy; (2) actions of a final "policymaker"; (3) persistent conduct by non-policymakers (*i.e.* "custom" with force of law); and (4) "deliberate indifference" to a risk of constitutional injury. *Baker*, 326 F.3d at 1306–07 (citations omitted).  Each theory has its own elements, which a § 1983 plaintiff bears the burden of pleading in accordance with *Iqbal*. *Blue v. District of Columbia*, 811  F.3d 14, 20(D.C. Cir. 2015).  Additionally, under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy andthe alleged constitutional violation, "such that [the former] was the moving force behind the [latter]."  *Baker*, 326 F.3d at 1306.

Plaintiff Asinor contends that the District is liable under the third municipal liability theory—that his property-related rights were violated pursuant to a custom of retaining no-papered arrestees' property.  *See* 2d Am. Compl. ¶ 81.  To state a claim for liability based on an alleged custom, a plaintiff must allege "concentrated, fully packed, precisely delineated scenarios" to support her allegations that such a policy or custom exists, *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)), and that the custom is "pervasive," *Tabb v. District of Columbia*, 605 F. Supp. 89, 96 (D.D.C. 2009); *see also Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (explaining that to show custom, Section 1983 plaintiffs must allege "that the municipality's employees engaged in a persistent or regular pattern of conduct that gave rise to the alleged constitutional violations").  Indeed, the past events purportedly establishing a custom must be identical to the alleged wrongdoing underlying a plaintiff's claim.  *Egudu*, 72 F. Supp. 3d at 41 (holding that report "analyz[ing] data related to disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show policy or custom of "violat[ing] an individual's free speech right or the right to be free from an unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133–34 (D.D.C. 2011) (holding report could not evidence municipal custom when "plaintiff was not arrested for the offense examined in the report").  Accordingly, Claims 4 and 5 are not actionable unless they are based on factual allegations showing instances of identical alleged wrongdoing—*i.e.*, examples of the District retaining the property of no-papered arrestees, without process, beyond the time it was reasonable to do so.  Plaintiffs' "[e]xamples of [alleged] prolonged retentions," 2d Am. Compl. ¶ 83, fit neatly into three distinct categories and fall well short.

*First*, Plaintiff Asinor alleges eight examples of supposedly prolonged retention from October 2015 to May 2021. *Id.* ¶ 83(b)–(h), (j).[7]  The Second Amended Complaint generically describes all these seizures as "prolonged," *id.*, but the Fourth Amendment protects against *unreasonable* seizures, not "prolonged" ones.  And if—as Plaintiff Asinor suggests over Defendants' objection—*Jacobsen* stands for the proposition that the retention of property lawfully seized could at some point become reasonable, it is surely the case that there is no bright-line temporal rule about when a seizure becomes unreasonable.  *Cf. Jacobsen*, 466 U.S. 109.  In such a paradigm, the facts of one case may render an 18-month seizure reasonable, whereas the facts of another may render a one-day seizure unreasonable.  And while Plaintiff Asinor provides a modicum of details concerning two of those examples (which are addressed below), the remainder are based on conversations Plaintiffs' counsel purportedly had with unidentified attorneys involving those unidentified attorneys' unidentified clients.  The complete lack of details surrounding these "examples" renders them useless for assessing policy or custom.  *Cf. Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 93-94 (D.D.C. 2011) (finding plaintiff did not state a claim for municipal liability when plaintiff offered only three examples and did not allege that "some, most, or all" individuals in similar circumstances experienced the alleged constitutional violation).  "[W]ithout some further factual enhancement," *Iqbal*, 556 U.S. at 678, there is simply no way to determine whether any of the events to which Plaintiff Asinor refers are relevant to his claim of municipal liability based on custom.  *Cf. Blue*, 811 F.3d at 20 (requiring § 1983 plaintiff to plead "elements" of municipal liability with "adequate factual support to 'state a claim to relief that is plausible on its face,'" as required by *Iqbal*).

---

[7]      MPD made more than 19,000 arrests in 2020 alone.  If a custom of retaining property longer than reasonably necessary actually existed, it is reasonable to expect to find more than a handful of alleged occurrences over a six-year period. *See* MPD 2020 Annual Report at 28 (available at: https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a. pdf.).

*Second*, Plaintiff Asinor alleges that the District unreasonably retained the cell phones of individuals arrested during the 2017 presidential inauguration.  2d Am. Compl. ¶ 83(i).  The 2017 presidential inauguration involved unprecedented rioting and civil disturbance, including mass arrests.[8]  The unique nature of that single event does not support Plaintiff Asinor's claim that it evidences a broader, longstanding municipal policy.  Further, Plaintiff Asinor's conclusory allegation does not provide sufficient detail to assess similarities to Plaintiff Asinor's alleged injuries.  For example, Plaintiff Asinor acknowledges that some of the individuals arrested in conjunction with the 2017 inauguration were charged with crimes, and the experiences of two individuals can hardly be extrapolated to all other individuals.  *See id.*

*Third*, Plaintiff Asinor alleges that Police Complaints Board Policy Report #19-4: Handling Property (Sept. 30, 2019) (PCB Policy Report) (attached as Ex. [2]) placed the District on notice that there were problems with MPD's handling of evidence.  2d Am. Compl. ¶ 85.[9]  In that report, the PCB explained that "the flexible and extensive nature of general order 601.1, when it is followed properly, ensures that MPD members have comprehensive guidelines to appropriately manage property."  Ex. [2], PCB Policy Report at 2.  The PCB also observed that "these policies adequately set forth effective procedures for handling all varieties of property as it may come into the custody of MPD during the course of official police activities."  *Id*.  The PCB concluded that "MPD policies currently in place for the handling of property generally conform to best practices standards."  *Id*. at 5.  Although the PCB did note that it receives "approximately 50 complaints per year categorized as mishandling property," those complaints generally

---

[8]     *See* Theresa Vargas, Taylor Hartz, and Peter Hermann, "Inauguration Protestors Vandalize, Set Fires, Try to Disrupt Trump's Oath, as Police Arrest More Than 200," *Washington Post*, Jan. 20, 2017, https://www.washingtonpost.com/local/protesters-bring-shouts-skirmishes-and-shutdowns-to-inauguration-celebration/2017/01/20/00ea4c72-df11-11e6-acdf-14da832ae861_story.html (accessed Jan. 19, 2022).

[9]     The PCB Policy Report was issued by the Police Complaints Board pursuant to D.C. Code § 5-1104(d).

involved either "mistakes made during the course of custody that caused the loss or damage of property" or "property seized or stolen from community members."  *Id*. at 3.  The PCB did not raise any concerns about MPD officers holding property of no-papered arrestees (or any other individuals) longer than necessary or a lack of available procedures for seeking the return of seized property.  Thus, the PCB Policy Report actually contradicts Plaintiffs' claim that MPD has a custom of unlawfully retaining the property of no-papered arrestees.

Because Plaintiffs fail to allege facts indicating that MPD has a municipal custom of retaining the property of arrestees past the point when it is constitutionally reasonable to do so, without a process to seek its return, Counts 4 and 5 should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Claims 1, 2, 4, and 5 of Plaintiffs' Second Amended Complaint.

Date:  January 19, 2022

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Helen M. Rave*
MATTHEW R. BLECHER [1012957]
Acting Chief, Section III, Civil Litigation Division
PHILIP A. MEDLEY [1010307]
HELEN M. RAVE*
Assistant Attorneys General

---

*        Admitted to practice only in the State of New York. Practicing in the District of Columbia under the direct supervision of Fernando Amarillas, a member of the D.C. Bar, pursuant to LCvR83.2(f) and D.C. Court of Appeals Rule 49(c)(4).

24

400 6th Street NW
Washington, D.C. 20001
Phone:  (202) 442-9774
Email:  matthew.blecher@dc.gov

*Counsel for Defendants District of Columbia,*
*Robert Glover, and Shawn Caldwell*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |
|---|
| OYOMA ASINOR, *et al.*, |
| *Plaintiffs*, |
| v. |
| DISTRICT OF COLUMBIA, *et al.*, |
| *Defendants.* |

Civil Action No. 1:21-cv-02158-APM

## ORDER

Upon consideration of Defendants' Partial Motion to Dismiss the Second Amended

Complaint and the entire record, it is hereby:

**ORDERED** that Defendants' Motion is GRANTED; and it is further

**ORDERED** that Claims 1, 2, 4, and 5 of Plaintiffs' Second Amended Complaint are

DISMISSED.

**SO ORDERED.**

Date: _____

_____
AMIT P. MEHTA
United States District Judge