## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

OYOMA ASINOR, *et al.*,

   *Plaintiffs*,

  v.

DISTRICT OF COLUMBIA, *et al.*,

   *Defendants*.

Case No. 1:21-cv-02158-APM

## DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARIAL DISMISSAL

  Plaintiffs Oyoma Asinor and Bryan Dozier fail to adequately rebut the arguments in Defendants District of Columbia (the District), Robert Glover, and Shawn Caldwell's Motion for Partial Dismissal.  Plaintiffs rely on inapposite caselaw in support of their argument that they can bring a claim for negligence *per se* under the First Amendment Assemblies Act (FAAA) Amendment Act § 121(b), and they have not shown that the FAAA contains an implied right of action.  And even if Plaintiffs could bring either type of claim, they cannot do so as to the individual Defendants.  Finally, Plaintiffs have not stated a claim under either the Fourth or Fifth Amendment.

## I. Plaintiffs Have Not Stated a Claim for Negligence *Per Se*.

  In support of their claim for negligence *per se* under the FAAA Amendment Act § 121(b), Plaintiffs rely on four cases in particular:  *Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268 (D.C. 1987); *Jarrett v. Woodward Bros.*, 751 A.2d 972 (D.C. 2000); *Leiken v. Wilson*, 445 A.2d 993 (D.C. 1982); and *H.R.H. Constr. Co. v. Conroy*, 411 F.2d 722 (D.C. Cir. 1969).  *See* Pls.' Opp'n [30] at 21-22.  These opinions are all distinguishable in the same way:

They did not analyze the question, central to Defendants' Motion, of whether the laws at issue imposed sufficiently specific duties.

*Rong Yao Zhou* and *Jarrett* concerned the same statute—a prohibition on liquor licensees from "'permit[ing] on the licensed premises . . . the consumption of any beverage by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated[.]'"  *Rong Yao Zhou*, 534 A.2d at 1271 (quoting D.C. Code § 25-121(b) (1981)); *see Jarrett*, 751 A.2d at 977.  *Leiken* concerned two regulations—one requiring that "'[e]very . . . [motor] vehicle . . . [to] be equipped with service brakes complying with the performance requirements of this section and adequate to control the movement of and to stop and hold such vehicle under all conditions of loadings, and on any grade incident to its operation[;]'" and one requiring that "'[a]ll brakes shall be maintained in good working order[.]'"  *Leiken*, 445 A.2d at 1002 n.16 (quoting D.C. Mun. Regs. tit. 18, §§ 720.2 & 720.11 (1981)).  Finally, *Conroy* concerned primarily two regulations—one requiring temporary floor coverings at construction sites to be "'laid tight and securely fastened in place'" as well as "'not less than one-by-ten inch planking[;]'" and one defining "securely fastened" as meaning that the covering "'shall withstand such weight or shock as is reasonably expected.'"  *Conroy*, 411 F.2d at 723 n.3 (quoting The District of Columbia Minimum Wage and Safety Board regulations Sections 11-21089 & 11-21002).  But the courts in each of these cases did *not* analyze the question presented in Defendants' Motion—i.e., whether the statute or regulation at issue imposed sufficiently specific duties.

In *Rong Yao Zhou* and *Jarrett*, each court analyzed whether the statute was intended to promote safety and whether the claimants' injuries were of the general type that the statute was intended to prevent.  *See Jarrett*, 751 A.2d at 978 (discussing *Rong Yao Zhou*, 534 A.2d at

2

1275).  In *Leiken*, the Court dealt with whether establishing a claim of negligence *per se* triggered automatic liability or presumptive liability subject to rebuttal with an acceptable excuse, 445 A.2d at 1002, and *Conroy* dealt with a similar question concerning a jury instruction about automatic liability, 411 F.2d at 724.  Thus, these cases provide no authoritative support for Plaintiffs' position.

But even if those cases could be read to *imply* that those courts found the duties in question to be specific enough, they still do not support Plaintiffs' position because the statutes and regulations at issue in those cases are not analogous to FAAA Amendment Act § 121(b). Plaintiffs state summarily that "determining whether an assembly is or is not protected by the FAAA is no different from determining whether a tavern patron is inebriated, or whether a temporary floor at a construction site is laid tight and securely fastened, or whether a vehicle's brakes are adequate to stop its operation."  Pls.' Opp'n [30] at 23.  Not so.  The tavern patron is either intoxicated or not; the temporary floor at the construction site is either laid tight and securely fastened or not; and the vehicle's brakes are either adequate to stop its operation or not. But whether a gathering is peaceful or riotous hinges on discretionary questions of reasonableness and probable cause.  In contrast, the tavern keeper in *Rong Yao Zhou* who serves alcohol to an intoxicated person violates the standard *regardless* of whether the keeper reasonably believed that the person was not intoxicated.  The same goes for the construction worker who improperly lays the temporary floor or the vehicle owner who fails to maintain his/her brakes.  But under the FAAA, an MPD officer who has *probable cause to believe* that a gathering is a riot does not violate the statute when he/she uses the proscribed techniques.

Plaintiffs claim that *dicta* in the ruling in *Horse*—where another Court in this jurisdiction found that several provision of the FAAA could not support a claim for negligence *per se*—

3

actually supports their position by arguing that "the Court recognized that a provision in the original FAAA requiring MPD commanders to approve the use of 'large scale canisters of chemical irritant . . . at *First Amendment assemblies*' would have been 'sufficiently precise' if the plaintiffs had alleged a breach of that duty."  Pls.' Opp'n [30] at 24 (quoting Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. [29-1] at 33:19-25, 34:9-11 (emphasis added)).  But Plaintiffs misread the analysis, as the Court said only that "*the requirement of approval of a commanding officer*" was sufficiently precise.  *See* Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. [29-1] at 33:19-34:11 (emphasis added).  The Court notably did not include the phrase "at First Amendment assemblies," and thus, its opinion was limited to that specific requirement of approval.  *See id.*

Plaintiffs argue that allowing them to assert negligence *per se* is in line with "the [FAAA's] explicit directives[]"—specifically, the section that states, "The provisions of this subchapter are intended to protect persons who are exercising First Amendment rights in the District of Columbia, and the standards for police conduct set forth in this subchapter may be relied upon by such persons in any action alleging violations of statutory or common law rights." D.C. Code § 5-331.17; Pls.' Opp'n [30] at 24.  Plaintiffs assert that "[t]he Council added this provision in lieu of an express right of action after a senior District official testified that an express right was unnecessary because the 'common law would dictate that if the statute was violated, it would constitute negligence per se.'"  Pls.' Opp'n [30] at 24 (quoting Pls.' Ex. A, Comm. Report on the FAAA [30-1] at 26).  Plaintiffs are referring to a summary of the testimony of George Valentine, then-Deputy Attorney General of the Civil Litigation Division of the Office of the Attorney General.  *See* Pls.' Ex. A, Comm. Report on the FAAA [30-1] at 26.

As a threshold matter, whether violation of a statute is negligence *per se* is a common law question, and the testimony of an attorney at a legislative hearing cannot establish negligence *per se*. And Plaintiffs provide no authority showing that testimony by an attorney with the Office of the Attorney General about a draft version of proposed legislation is in any way binding. Moreover, there is nothing in the Committee Report suggesting that the Council specifically relied on Deputy Valentine's representation. But more importantly, Plaintiffs take the statement out of context by conveniently omitting the attachments to the Committee Report, which included a written statement from Robert Spagnoletti—then-Attorney General of the District of Columbia. *See* Reply Ex. 1, Full Comm. Report at pp. 172-85. The statement represented the "formal comments" from the Office of the Attorney General, and it was submitted after Deputy Valentine's testimony. *Id.* at p. 172. In the statement, the Attorney General pointed out, "[t]here are a number of adequate remedies at common law and under federal civil rights statutes currently available to someone claiming to be aggrieved by the District of Columbia in the context of mass protests and demonstrations," including "negligence, false arrest, false imprisonment, malicious prosecution, excessive use of force (assault and battery) or the negligent/intentional infliction of mental or emotional distress." *Id.* at p. 183. And just like Plaintiffs here, the plaintiffs in *Horse* attempted to blow out of proportion the summary of Deputy Valentine's testimony, but Judge Berman Jackson rightly batted it away. *See* Defs.' Ex. 1, Trans. of Sept. 27, 2019 Status Conf. [29-1] at 26:6-27:25.

## II.    Even if Plaintiffs Could Bring a Claim for Negligence *Per Se* Under the FAAA, They Cannot Do So Against the Individual Defendants.

Even if this Court allows Plaintiffs to proceed on a theory of negligence *per se*, it should only allow Plaintiffs to do so against the District because the FAAA Amendment Act § 121(b) only addresses conduct by "MPD," not individual officers. Plaintiffs disagree and cite *Leiken*

and *Conroy* for the proposition that the D.C. Court of Appeals[1] "has applied negligence per se when the applicable statutory or regulatory standard does not name the person or even the entity to which it applies." Pls.' Opp'n [30] at 19. But the Courts in *Leiken* and *Conroy* did not actually analyze that question. *See generally Leiken*, 445 A.2d 993; *Conroy*, 411 F.2d 722. More importantly, the regulations in *Leiken* explicitly applied to "[e]very . . . [motor] vehicle" as well as "[a]ll brakes[,]" meaning that they unambiguously applied to everyone who owned or operated a motor vehicle. *Leiken*, 445 A.2d at 1002 n.16. And in *Conroy*, the regulations seemingly were not directed at any specific person or entity, meaning they apply equally to everyone. *Conroy*, 411 F.2d at 723 n.3. Plaintiffs ignore the statute in *Rong Yao Zhou* and *Jarrett*, which applied solely to—and was, in fact, being asserted only against—liquor licensees. *Rong Yao Zhou*, 534 A.2d at 1271; *Jarrett*, 751 A.2d at 977. Like that statute, the FAAA Amendment Act § 121(b) applies solely to MPD, and if this Court finds that Plaintiffs can assert a claim of negligence *per se* under the statute, they should only be allowed to do so against MPD.

## III.   The FAAA Does Not Contain an Implied Right of Action.

Plaintiffs acknowledge that "this Court has twice read the FAAA not to include a private right of action[]"—once in *Mahoney v. District of Columbia*, 662 F. Supp. 2d 74, 94 n.11 (D.D.C. 2009), *aff'd sub nom. Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011), and once in *Horse*—but Plaintiffs encourage this Court to reach a contradictory result here. Pls.' Opp'n [30] at 26. First, Plaintiffs try to differentiate *Mahoney* by arguing that the plaintiff there sought relief based on an alleged violation of a different provision of the FAAA—D.C. Code § 5-331.06. *Id.*

---

[1]      *Conroy* is a decision from the D.C. Circuit Court of Appeals, not the D.C. Court of Appeals.

But the proposed private right of action the Council rejected—and that the *Mahoney* court considered—was generally applicable and not limited to that provision.  And Plaintiffs cast aside the ruling in *Horse* as based on "incorrect[] reason[ing]" regarding the Council's decision to exclude the private right of action provision.  *Id.*  Plaintiffs imply that the Council omitted the provision *because of* Deputy Valentine's testimony and argue that "[t]he Council thus anticipated that the statute's commands would be directly enforceable."  *Id.*

But legislative history is irrelevant when a statute is clear.  And even if legislative history were considered, it would have to be strong and unambiguous.  *Azar v. Allina Health Services*, 139 S. Ct. 1804, 1814 (2019) (holding that "legislative history is not the law," and that "even those of us who believe that clear legislative history can 'illuminate ambiguous text' won't allow 'ambiguous legislative history to muddy clear statutory language.'").  In this case, the statute is clear that there is no private right of action.  And the legislative history Plaintiffs provide is exceedingly weak.  Plaintiffs only point to the hearing testimony of an attorney who was not even a member of the legislative body that enacted the statute, and they do not cite any evidence supporting an inference that Deputy Valentine's testimony was the basis for the Council's rejection of a private right of action.  The more plausible inference is that the Council determined a private right of action was not necessary because an aggrieved Plaintiff would have other avenues of recourse, as the formal written comments from the Office of the Attorney General pointed out.  *See* Reply Ex. 1, Full Comm. Report at pp. 172-85.

And of course, the Council had the ability to include a private right of action in the statute, but explicitly chose not to do so.  Even if the Council was mistaken in the reasoning for that choice—which Plaintiffs have not shown here—its decision to eliminate any reference to a

private right of action is fatal to Plaintiff's claim that an implied right exists here; quite simply, the Council could not imply a right of action it expressly rejected.

**IV.**   **Plaintiff Asinor Has Not Stated a Predicate Constitutional Violation of the Fourth Amendment.**

Plaintiff Asinor contends that Supreme Court precedent establishes that a challenge to the prolonged retention of lawfully seized property is cognizable under the Fourth Amendment, but this position overreads the Supreme Court caselaw and conflicts with the weight of circuit caselaw.  As discussed in the District's Motion, *United States v. Place*, 462 U.S. 696 (1983), and *United States v. Jacobsen*, 466 U.S. 109, 124 (1984), concern the transformation of an investigative detention into a seizure and the initial loss of a possessory interest.  *See* Defs.' Mem. of P. & A. [29] at 15.  Plaintiff Asinor's argument that subsequent Supreme Court caselaw and circuit caselaw mandate a broader interpretation of these cases is unsupported.

Plaintiff Asinor points to *Segura v. United States*, 468 U.S. 796 (1984), in support of his argument.  Pls.' Opp'n [30] at 19–20.  In *Segura*—issued a few months after *Jacobsen*—a portion of the opinion authored by Chief Justice Burger and joined only by Justice O'Connor and a dissent joined by four Justices both discuss how to interpret and apply *Place*.  The section of the court's opinion joined only by Justice O'Connor contains a footnote explaining that the decision in *Place* addressed a prolonged detention based on reasonable suspicion and contained no suggestion that the delay between the establishment of probable cause and obtaining a warrant "presented an independent basis for suppression of the evidence eventually discovered."  *Id.* at 813 n.8.  In response to Chief Justice Burger's discussion of *Place*, the dissent contends that while the Chief Justice "suggest[ed] that *Place* approved the almost 3-day detention of Place's luggage before a warrant was obtained, . . . the Court had no occasion to reach that issue because it held that the initial 90-minute detention . . . was unreasonable."  *Id.* at 823 n.14 (Stevens, J.,

dissenting).  Contrary to plaintiff Asinor's contention that *Segura* demonstrates the broad scope of *Place*, six Justices agreed in *Segura* that *Place* only addressed the length of time property could be detained based on reasonable suspicion alone.

The other Supreme Court cases Plaintiff Asinor cites are inapposite.  In *Rodriguez v. United States*, the Court held that a traffic stop cannot be prolonged beyond the time reasonably necessary to effectuate the traffic stop absent reasonable suspicion.  575 U.S. 348, 352 (2015).  Like *Place*, this case considered how long a law enforcement officer can detain someone for a limited purpose based on less than probable cause.  In *Manuel v. Joliet*, the Court held that if a person brings a claim "for unlawful pretrial detention" unsupported by probable cause, then the constitutional provision implicated is the Fourth Amendment.  137 S. Ct. 911, 919 (2017).  The basis of the Fourth Amendment claim recognized in *Manuel* was that—because the underlying determination of probable cause authorizing the pretrial detention was based on false statements by a police officer—the detention was never actually supported by probable cause.  *Manuel*, 137 S. Ct. at 918–19.  Here, Plaintiff Asinor has not argued that the initial seizure of the property in question was unsupported by probable cause and, indeed, dropped his false arrest challenge to the underlying arrest after amending the Complaint.[2]

Most circuit courts that have considered claims based on prolonged retention of lawfully seized property have found that those claims do not sound in the Fourth Amendment and should

---

[2]     While Plaintiff Asinor points to instances where the Supreme Court has considered caselaw about seizures of property when analyzing seizures of person and vice versa—Opp'n [30] at 22—the First Circuit noted in *Denault v. Ahern* when it held the retention of lawfully seized property did not implicate the Fourth Amendment that "[a] different result may well obtain when the government seizes a person rather than property."  857 F.3d 76, 84 (1st Cir. 2017) (citing *Manuel*, 137 S. Ct. at 919); *see also Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999) ("We need not address whether the term 'seizure' in the Fourth Amendment has a different temporal scope when a person rather than property is at issue . . . .").

instead be analyzed under other constitutional provisions.  *See Denault v. Ahern*, 857 F.3d 76, 83 (1st Cir. 2017); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003); *Shaul v. Cherry-Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d Cir. 2002); *Fox v. Van Oosterum*, 176 F.3d 342, 351 (6th Cir. 1999).[3]  The only circuit court case Plaintiff Asinor cites that found a viable Fourth Amendment claim based on a similar claim—i.e., a challenge to the prolonged retention of lawfully seized property without an allegation of theft—is *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).  In *Brewster*, the Ninth Circuit interpreted *Place* to mean that the Fourth Amendment required the retention of property be continually justified by probable cause.  *Id.*  In a subsequent Ninth Circuit case, however, the court held that officers who had allegedly stolen money had qualified immunity against a Fourth Amendment claim because it was not sufficiently clear whether theft of lawfully seized property would violate the Fourth Amendment. *Jessop v. City of Fresno,* 936 F.3d 937, 941 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 2793 (2020). In a concurring opinion, Judge Milan recognized that "*Brewster*'s reasoning appears to conflict with the Supreme Court's jurisprudence on Fourth Amendment seizures . . . [and] also conflicts

---

[3]      Plaintiff Asinor points to other Second Circuit decisions, alleging that they reached different conclusions than the court in *Shaul*—*see* Opp'n [30] at 25–26—but these cases do not contradict *Shaul*.  In *United States v. Smith*, the court analyzed whether law enforcement had unreasonably delayed between the seizure of property and the subsequent application for a warrant and cited *Place* for the proposition that, under certain circumstances, the Fourth Amendment allows law enforcement to seize property without a warrant "provided that they follow up by applying to a judge for a warrant to search the property's contents."  967 F.3d 198, 205 (2d Cir. 2020).  *United States v. Martin* also addressed a motion to suppress evidence based on the delay between law enforcement seizing property and obtaining a search warrant.  157 F.3d 46, 53–55 (2d Cir. 1998).  *Krimstock v. Kelly* found that the Fourth Amendment did not require a hearing to review a prosecutor's determination that a vehicle was needed as potential evidence. 464 F.3d 246 (2d Cir. 2006).  The Second Circuit continues to apply *Shaul*. *See Bennett v. Dutchess County*, 832 Fed. App'x 58, 59 (2d Cir. 2020); *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012); *see also Tammaro v. City of New York*, Civil Action No. 13-6190, 2018 WL 1621535, at *10–12 (S.D.N.Y. March 30, 2018) (rejecting argument that *Krimstock* abrogated *Shaul*).

with that of several other circuits, which have concluded that the Fourth Amendment provides protection only against the initial taking of property, not its continued retention." *Id.* at 943 (Milan, J., concurring).  While Plaintiff Asinor also cites to cases in this district that applied the Fourth Amendment to consider the retention of lawfully seized property, those decisions did not address the weight of circuit caselaw finding such claims do not sound in the Fourth Amendment.  *See Smith v. District of Columbia*, 387 F. Supp. 3d 8, 25 (D.D.C. 2019); *Avila v. Dailey*, 246 F. Supp. 3d 347, 357 (D.D.C. 2017); *see also Jones v. District of Columbia*, Civil Action No. 16-2405, 2019 WL 5690341, at *2 (D.D.C. June 13, 2019) (citing *Segura* for the proposition that a seizure must remain reasonable over time in *dicta*).

Plaintiff Asinor cites *Mom's, Inc. v. Willman*—an unpublished Fourth Circuit decision—that held that a claim that a law enforcement officer stole lawfully seized property sounded in the Fourth Amendment.  109 Fed. App'x 629 (4th Cir. 2004).  However, the Fourth Circuit found that the officer in question had qualified immunity, partly because it recognized that "Supreme Court precedent tilts slightly against the existence of any constitutional right against theft during the course of a search."  *Id.* at 637 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  More recently, the Eleventh Circuit found that an allegation of theft of "legally seized property raises an issue of procedural due process under the Fourteenth Amendment" rather than the Fourth Amendment.  *Case v. Eslinger*, 555 F.3d 1317, 1339 (11th Cir. 2009).  Other courts have found qualified immunity for law enforcement officers who allegedly stole lawfully seized property and identified a circuit split on whether such claims implicate the Fourth Amendment.  *See Springer v. Albin*, 398 Fed. App'x 427, 435–36 (10th Cir. 2010); *Sanders v. Balt. City Police Dep't*, Civil Action No. 19-551, 2020 WL 1505697, at *4 (D. Md. Mar. 30, 2020) (comparing *Shaul*, *Fox*, and *Lee* with *Beckett* and *Mom's* and concluding there "appears to be a split among

the several circuits on the question of whether a law enforcement officer's failure to return
lawfully seized property implicates the Fourth Amendment").  This analysis runs contrary to
plaintiffs' contention that *Place* and *Jacobsen* establish that any allegedly prolonged retention of
property sounds in the Fourth Amendment, regardless of the context.

Plaintiff Asinor cites a number of cases holding that the delay between seizing property
and obtaining a warrant may require suppression of related evidence under the Fourth
Amendment, including *United States v. Wilkins*, 538 F. Supp. 3d 49, 90–96 (D.D.C. 2021), a
recent case in this district.  Plaintiff cites to one Northern District of California case, *Sandoval v.
Cty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014), *aff'd* 912 F.3d 509 (9th Cir. 2018),
for the proposition that the same analysis should apply to a prolonged retention of property itself
and a delay in obtaining a search warrant.  However, the circuit decisions discussed above that
considered whether a challenge to the retention of lawfully seized property, or a challenge to the
theft of such property, sound in the Fourth Amendment did not apply this precedent.  *Compare,
e.g., United States v. Veillette*, 778 F.2d 899, 903 & n.3 (1st Cir. 1985) (considering whether
length of time between seizure of property and issuance of search warrant was unreasonable and
justified suppression of evidence) *with Denault*, 857 F.3d at 83 (finding a challenge to the
retention of lawfully seized property did not sound in the Fourth Amendment).  In *United States
v. Burgard*, the Seventh Circuit rejected the argument that the duty of law enforcement to obtain
a warrant within a reasonable time conflicted with their holding in *Lee* that a claim challenging
the retention of property itself did not sound in the Fourth Amendment.  675 F.3d 1029, 1032
(7th Cir. 2012).  Even in *Brewster*, the Ninth Circuit cites to *United States v. Dass*, 849 F.2d 414
(9th Cir. 1988), for the proposition that the length of a warrantless seizure may violate the Fourth
Amendment and subsequently states it has "no cases on point" to determine whether the Fourth

Amendment required law enforcement to have further authorization for the 30-day impound at issue once the exigency that justified the initial warrant exception ended.  *Brewster*, 859 F.3d at 1197.  While the Ninth Circuit concluded that the Fourth Amendment was ultimately implicated, its reasoning relied on its own interpretation of *Place*, not on the application of the precedent that the Fourth Amendment is implicated by a delay between a warrantless seizure and obtaining a search warrant. *Id*.[4]  The issuance and execution of search warrants is part of core Fourth Amendment jurisprudence, while "a government's decision regarding how and when to return once lawfully obtained property 'raises different issues, which the text, history, and judicial interpretations of the Fourth Amendment do not illuminate.'"  *Lee*, 330 F.3d at 465 (quoting *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989)).

The weight of circuit caselaw is against finding that a challenge to the retention of lawfully seized property sounds in the Fourth Amendment.  Plaintiff Asinor has not stated a predicate Fourth Amendment violation and Claim 4 should be dismissed.

## V.   Plaintiff Asinor Has Not Stated a Predicate Violation of the Fifth Amendment.

D.C. Superior Court Criminal Rule 41(g) provides the remedy Plaintiff Asinor seeks and his Fifth Amendment claim is foreclosed because he did not avail himself of the applicable state law procedure before bringing this claim.  While Plaintiff Asinor contends that he did not need to bring a Rule 41(g) motion because Rule 41(g) does not provide constitutionally adequate process, he is incorrect and his Fifth Amendment claim should be dismissed.

---

[4]     The Ninth Circuit considered *Sandoval* after its decision in *Brewster*, and its analysis of the Fourth Amendment claim in *Sandoval* relied on the application of *Brewster*.  *Sandoval*, 912 F.3d at 509, 515.

**A.**   **Plaintiff Cannot State a Fifth Amendment Claim Because He Did Not Avail Himself of Rule 41(g), Which Provides the Process that Plaintiff Seeks.**

Plaintiff Asinor contends that he did not need to avail himself of Rule 41(g) to bring a Fifth Amendment claim because Rule 41(g) is plainly not available under these circumstances or, alternatively, is too speculative.  Pls.' Opp'n [30] at 34–38.  However, this assertion is unsupported by the text of Rule 41(g) and the D.C. Court of Appeals caselaw interpreting the rule.  Because Rule 41(g) was available to Plaintiff Asinor, his failure to pursue Rule 41(g) is fatal to his Fifth Amendment claim.

The language of Rule 41(g) itself is broad; the text provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."  Plaintiff Asinor acknowledges that the text of Rule 41(g) "could be read broadly to apply whenever MPD seizes property and the owner wants it back."  Pls.' Opp'n at 35.  He further acknowledges that federal courts have jurisdiction to consider motions for the return of property under the analogous federal rule even when no charges have been filed.  Pls.' Opp'n at 37.  While Plaintiff Asinor argues that federal courts exercise discretion before assuming jurisdiction of these motions under the federal rule, *id.*, he does not point to any similar language in the caselaw interpreting the District rule.

Plaintiff Asinor attempts to draw a distinction between cases where the D.C. Court of Appeals has recognized jurisdiction after a case was dismissed and where, as in this case, no charges were filed.  Plaintiff Asinor cites to nothing in the text of the rule to support this distinction and argues instead that Rule 41(g) would not further judicial economy under those circumstances.  Pls.' Opp'n at 35. However, courts have found that it would be appropriate for the criminal court to hear a Rule 41(g) motion after a case was dismissed without prosecution, *see Cousart v. Metro Transit Police Chief*, 101 F. Supp. 3d 27 (D.D.C. 2015), and when the

14

charges against the movant were dropped at arraignment the same day as the arrest, *Alleyne v. United States*, 455 A.2d 887 (D.C. 1982). In *Alleyne*, the D.C. Court of Appeals noted, while the presiding judge had not had the opportunity to hear the facts of the case, "[t]hat should be no bar, however, to taking jurisdiction over a motion where no trial has occurred" because it "is a simple enough matter for a judge to hold a hearing at whatever stage the motion is brought, eliciting the facts just as would be done at trial." 455 A.2d at 889. The rationale of this case applies to an instance where charges have not been brought.

Plaintiff Asinor cites to *Stevens v. United States*, 462 A.2d 1137 (D.C. 1983), and *District of Columbia v. Dunmore*, 749 A.2d 740 (D.C. 2000), in arguing that the D.C. Court of Appeals has interpreted the scope of Rule 41(g) narrowly—Pls.' Opp'n [30] at 35—but Plaintiff overreads these decisions. In *Stevens*, the D.C. Court of Appeals found that, because the property at issue was no longer in possession of the District, the Rule 41(g) motion was correctly denied because "a hearing on the motion would require the criminal trial judge in effect, to try what is essentially a civil action and consider entering judgment against one or more parties rather than simply ordering a return of property." *Stevens*, 462 A.2d at 1139. These circumstances do not apply to this case: Plaintiff Asinor did not allege that his property was ever in the custody of a third party and, had Asinor brought a motion seeking the return of this property, the court could have resolved the motion by simply ordering the return of the property in question. *Dunmore* is also inapplicable. There, the court considered whether an individual could bring a Rule 41(g) motion once a forfeiture proceeding concerning the same property had commenced. *Dunmore,* 749 A.2d at 743. The *Dunmore* court drew a distinction between the "'simple matter' of eliciting facts on a motion for return of property" and the more involved forfeiture procedure. *Id.* at 744 (quoting *Alleyne*, 455 A.2d at 889). Neither case suggests that

Rule 41(g) would be unavailable under the circumstances alleged here. Additionally, Plaintiff Asinor acknowledged in his pleading that other individuals whose cases had been "no papered" had Rule 41(g) motions pending before the Superior Court—2d Am. Compl. [21-1] at ¶¶ 90–92—suggesting that Rule 41(g) is available under these circumstances.[5]

Plaintiff also points to *Avila v. Dailey*, 246 F. Supp. 3d 347 (D.D.C. 2017), to demonstrate that Rule 41(g) was not available for an individual who is not charged with a crime. However, the *Avila* court noted that the defendant only cited federal cases interpreting the federal rule and that it was "unclear whether, under D.C. law, a person who is not a defendant in a criminal case can bring a Rule 41(g) case in Superior Court." *Id.* at 362. A consideration of the D.C. Court of Appeals caselaw shows that Rule 41(g) is available and that the plain text of the rule has not been limited in the way Plaintiff Asinor suggests.

Because the text of Rule 41(g) and the caselaw interpreting the rule demonstrate that Rule 41(g) was available, Plaintiff Asinor has not stated a constitutional claim. "Where adequate post-deprivation state remedies are available, no cognizable constitutional claim for procedural due process can be stated." *Dukore v. District of Columbia*, 970 F. Supp. 2d 23, 32 (D.D.C. 2013). "The fact that plaintiff chose not to take advantage of the process available does not create a due process claim." *Medina v. District of Columbia*, 517 F. Supp. 2d 272, 283 (D.D.C. 2007). Plaintiff has not alleged that he utilized the available procedure to challenge the deprivation of property, and therefore has not stated a due process claim.

---

[5] Plaintiff Asinor misconstrues the District's discussion of standing in its Motion. Pls.' Opp'n [30] at 39. The District does not challenge Plaintiff Asinor's standing on his own behalf; rather, to the extent he intends to, Plaintiff Asinor does not have standing to challenge the process non-parties received.

### B.   The Court Should Analyze This Procedure Under *Medina.*

As explained in the District's Motion, the Court should analyze any challenge to the procedures afforded by Rule 41(g) under *Medina* because it is a state procedural rule that is part of the criminal process.  *See* Defs.' Mem. of P. & A. [29] at 19.  Plaintiff Asinor has not—and could not—argue that 41(g) would not survive scrutiny under *Medina*.  Plaintiff Asinor instead argues that *Nelson v. Colorado*, 137 S. Ct. 1249 (2017) and *Kaley v. United States*, 571 U.S. 320 (2014), require the application of *Mathews*, not *Medina*.  Pls. Opp'n [30] at 40.  In *Nelson*, the Supreme Court considered procedures concerning the return of property after the criminal process had ended and there was "no prospect of reprosecution."  137 S. Ct. at 1255.  The *Nelson* Court cited Chief Justice Roberts's dissent in *Kaley* in support of its opinion.  *Id*.  *Kaley* addressed the procedures available to a criminal defendant to challenge the seizure of property as potentially subject to forfeiture.  571 U.S. at 324.  Neither *Nelson* nor *Kaley* addressed a claim for the return of property seized incident to an arrest or during an active criminal investigation.  Here, plaintiffs' challenge to Rule 41(g) is expressly limited to those two situations and therefore *Medina* provides the proper standard of review.

### C.   Rule 41(g) Satisfies *Mathews.*

Even if the Court were to apply *Mathews*, Rule 41(g) provides adequate process.  Plaintiff Asinor's proposed additional process would create a significant administrative burden and only have a minimal benefit in reducing the risk of erroneous deprivation.  Plaintiff Asinor seeks an opportunity to be heard before a neutral decision maker, which is what Rule 41(g) already provides.  The additional procedure Plaintiff Asinor seeks concerns only the timing of this hearing and how it is initiated.

Plaintiff Asinor is not arguing that the District should provide pre-deprivation hearings and acknowledges that seizures incident to arrest are permitted.  Pls.' Opp'n [30] at 41.  Plaintiff Asinor seeks additional process to reduce the risk of prolonged retention of lawfully seized property.  It is unclear what timeframe Plaintiff thinks would be appropriate and therefore what benefit additional procedures would provide.  Plaintiff suggests that individuals who will be charged with a crime would generally be charged before they would have an automatic hearing, Pls.' Opp'n [30] at 43, apparently recognizing that a hearing before a neutral decision maker could not be immediate.  Under those circumstances, it is unclear how significant a benefit Plaintiff Asinor's proposed additional procedure would provide, especially as an individual could bring a Rule 41(g) motion at any point after the property has been seized.[6]

Despite Plaintiff's contention, creating a system of automatic hearings would create a significant administrative burden, especially as it would create a bifurcated system in which individuals who are not charged with a crime will have an automatic hearing scheduled but, if they are charged with a crime, will not have an automatic hearing and should instead file a Rule 41(g) motion.  There is no reason to create a bifurcated system, which could cause administrative challenges and confusion for arrestees.  Additionally, such a system could create a perverse incentive for the prosecution to file charges early and often in order to avoid the automatic hearing.

## VI.    Plaintiff Has Not Stated A Claim for Municipal Liability.

Even if Plaintiff Asinor has stated a claim for a predicate constitutional violation under

---

[6]      Plaintiff Asinor points to two District cases concerning the forfeiture of vehicles that applied *Mathews* and found that a hearing was required.  Opp'n at 42.  However, both decisions found that there was no hearing available at all.  *See Brown v. District of Columbia*, 115 F. Supp. 56, 65 (D.D.C. 2015); *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 102 (D.D.C. 2012).  Here, Rule 41(g) provides a hearing procedure.

the Fourth or Fifth Amendments, he has not plausibly alleged that the District has a widespread and pervasive custom of unreasonably retaining property of arrestees and, therefore, has not alleged a viable theory of municipal liability.  *See Tabb v. District of Columbia*, 605 F. Supp. 2d 89, 96 (D.D.C. 2009) ("The policy or custom must be pervasive to support municipal liability.").[7]

Plaintiff Asinor points to a 2019 Police Complaints Board (PCB) Report and alleges that the report "rais[es] concerns about similar conduct."  Pls.' Opp'n [30] at 28.  But the PCB report does not suggest a custom or pervasive practice of officers failing to comply with policy, let alone of a custom of unreasonably retaining property as plaintiffs allege here.  The PCB's acknowledgment that "the procedures in place for handling property require a high level of police accountability, and extensive training for all members who handle property, as the procedures can only work when officers follow the policy and are held accountable when violations occur" does not put the District on notice of a pattern of constitutional violations related to the handling of property.  *See* Defs.' Ex. 2, PCB Policy Report [29-2] at 3.  At the time of the report, the Office of Police Complaints received approximately 50 complaints per year about the handling of property, generally related to mistakes that caused the loss or damage of property or allegations of theft by MPD officers.  *Id*.  Here, Plaintiff Asinor alleges that his property was unreasonably retained; neither category of complaint discussed in the PCB report puts the District on notice of purportedly unreasonable retention of property.  *Cf. Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 42 (D.D.C. 2014) (report analyzing racial disparities in

---

[7]     Plaintiff Asinor contends that the District is automatically liable for the purported due process violation if the Court finds that Rule 41(g) is inapplicable.  The District does not concede this point.  *See* Fed. R. Civ. P. 12(b).

arrests was not relevant to establishing a custom of Fourth or Fifth Amendment violations). Furthermore, MPD made more than 19,000 arrests in 2020.[8]  Even if complaints discussed in the PCB were prima facie identical to those alleged here, 50 complaints out of approximately 19,000 arrests would not put the District on notice of a custom that is "so engrained that it amounted to a 'standard operating procedure' of which municipal policymakers must have been aware."  *Hurd v. District of Columbia*, 997 F.3d 332, 338 (D.C. Cir. 2021) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  Plaintiff Asinor also cites to a 2016 article from *The Atlantic*— Pls.' Opp'n [30] at 28—but he fails to explain why MPD would rely on one news article from approximately five years ago for information about MPD's handling of property instead of the more recent PCB report. *Cf. Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) ("One study, seven years prior to Plaintiff's arrest, does not show a 'persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, one that caused the deprivation of constitutional rights plaintiffs experienced.'" (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125–26 (D.C. Cir. 1986))).

Plaintiff Asinor contends that, in addition to the PCB report and *The Atlantic* article, the number of purportedly prolonged seizures mentioned in Plaintiffs' pleading puts the District on notice of a custom.  Pls.' Opp'n [30] at 28.  But Plaintiff Asinor has only alleged 200 seizures arising out of one unusual incident in 2017, 35 seizures arising out of a mass arrest incident three years later, and seven individual instances between 2018 and 2021 out of the thousands of arrests

---

[8]     MPD 2020 Annual Report at 28. Available at: https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR2020_lowres_a. pdf.

that MPD makes each year. *Id.* at 27–28.[9]  Especially in light of the information provided in the PCB report, these incidents were insufficient to put the District on notice.  Unlike in *Powe v. Chicago*, 664 F.2d 639 (7th Cir. 1981), and *Singh v. District of Columbia*, 881 F. Supp. 2d 76 (D.D.C. 2012)—two of the cases Plaintiff Asinor cites—the alleged incidents did not happen repeatedly to the same person but instead to different individuals over the course of several years.

Plaintiff Asinor contends that the unique circumstances of the purported seizures and prolonged retention arising out of the 2017 inauguration are immaterial to comparing the incidents. Opp'n at 31.  Contrary to Plaintiffs' allegations, the facts of the individual seizures related to the inauguration are material, particularly whether the individuals in question were charged with a crime.  If the individuals in question were charged with a crime, the reasonableness of any retention may be impacted.  *See* Sup. Ct. Crim. R. 16(a)(1)(E) (requiring the government to make tangible objects material to the government's case available to a criminal defendant).  The purportedly prolonged retention of cell phones seized in relation to the 2017 inauguration has limited utility in demonstrating a custom because of the unique circumstances accompanying the purported seizure of those phones.

In addition to the inauguration protests, Plaintiff Asinor identified seven individual incidents and one incident after which 35 individual phones were purportedly retained for a prolonged period.  2d Am. Compl. [21-1] ¶ 83.  Plaintiff Asinor argues that they have provided adequate detail about the additional examples they provide to establish a custom, but they have

---

[9]     Plaintiff Asinors's contention that two phones seized during the January 2017 protests were lost and that the individuals were then given the opportunity to look through a bin of cell phones is not persuasive. 2d Am. Compl. [21-1] at ¶ 83.  The alleged incident took place in connection with the unusual circumstance of mass protests and occurred several years ago, before the 2019 PCB Report.

failed to do so.  Plaintiff Asinor cites an out-of-circuit case for the proposition that the recitation

of facts to support a custom theory of liability does not need to be particularly detailed.  Pls.'

Opp'n [30] at 29.  However, courts in this district have required plaintiffs to allege

"concentrated, fully packed, precisely delineated scenarios" to support allegations of a custom.

*Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of*

*Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)); *see Carter*, 795 F.2d at 125; *Ryan v. District of*

*Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) ("When a plaintiff seeks to establish

municipal liability in the absence of an explicit policy, he must allege 'concentrated, fully

packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists'"

(quoting *Page*, 999 F. Supp. 2d at 284)).  Plaintiff Asinor has failed to meet that bar here; most

of his allegations involve information provided by unidentified attorneys about their unidentified

clients.  2d Am. Compl. [21-1] ¶ 53.  Plaintiff Asinor has failed to plausibly state a claim for

municipal liability.

## CONCLUSION

For the foregoing reasons, along with those in Defendants' Motion for Partial Dismissal,

the Court should dismiss Claims 1, 2, 4, and 5 of Plaintiffs' Second Amended Complaint.


Date:  March 23, 2022                                Respectfully submitted,

                                                     KARL A. RACINE
                                                     Attorney General for the District of Columbia

                                                     CHAD COPELAND
                                                     Deputy Attorney General
                                                     Civil Litigation Division

*/s/ Stephanie Litos*
STEPHANIE LITOS [483164]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Philip A. Medley*
PHILIP A. MEDLEY [1010307]
HELEN M. RAVE*
Assistant Attorneys General
400 6th Street NW
Washington, D.C. 20001
Phone:  (202) 724-6626 / (202) 735-7520
Fax:  (202) 741-5920
Email:  philip.medley@dc.gov
helen.rave@dc.gov

*Counsel for Defendants District of Columbia, Robert Glover, and Shawn Caldwell*

---

*      Admitted to practice only in the State of New York.  Practicing in the District of Columbia under the direct supervision of Stephanie Litos, a member of the D.C. Bar, pursuant to LCvR83.2(f) and D.C. Court of Appeals Rule 49(c)(4).