**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **OYOMA ASINOR, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA, *et al.*,**<br><br>**Defendants.** | **No. 1:21-cv-02158-APM** |

**<u>REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

Plaintiffs attempt to avoid dismissal of their Complaint by (1) muddying the water concerning the proper standard for a municipal liability claim based on custom or practice, (2) adopting a different custom or practice theory than what they have so far alleged, and (3) ignoring critical (indeed, dispositive) factual differences between their claims and those of their alleged comparators. But Plaintiffs are wrong about the proper standard; they cannot amend or expand their custom or practice theory through their opposition; and it remains the case that Plaintiffs have failed to identify enough examples of their alleged custom or practice to survive dismissal. Accordingly, the Court should dismiss Plaintiffs' Fourth Amendment claim and decline to exercise supplemental jurisdiction over their conversion claim.

**ARGUMENT**

**I. <u>The Court Should Dismiss Claims 1, 2, and 3 for Lack of Subject Matter Jurisdiction.</u>**

The only federal claim in this case is Asinor's Fourth Amendment challenge to the purportedly prolonged retention of his property after he was arrested on the night of August 30–31, 2020. *See* Second Am. Compl. [24] ¶¶ 69–70, 128–30. As the District explained in its Motion, this claim does not have a common nucleus of operative fact with Asinor and Dozier's

state law claims related to MPD's use of force on August 29, 2020, *i.e.*, Claims 1, 2, and 3, and therefore, the Court lacks subject matter jurisdiction over those claims. *See* Def.'s Mem. in Support of Mot. to Dismiss [52-1] (Def.'s Mot.) at 10–11. In response, Plaintiffs argue that these claims both arise from MPD's dispersal of protests at the same location a day apart and that the claims overlap on damages. Pls.' Opp'n to Defs.' Third Mot. to Dismiss [53] (Pls.' Opp'n) at 34–35. Neither argument is persuasive.

First, Plaintiffs contend that there is overlap between these claims because both sets of claims arise from MPD's dispersal of protests at the same location. Pls.' Opp'n at 34. Plaintiffs extrapolate from this statement that "[b]oth sets of claims . . . involve facts about MPD's policies and practices for dispersing protests and for investigating them." *Id.* But this statement reveals the problem with Plaintiffs' argument: Both sets of claims could potentially involve MPD policies, but each would concern different policies. Plaintiffs have not explained, and it is certainly not clear on its face, why their claims concerning the use of force on August 29, 2020, would involve MPD's investigation policies. Nor have Plaintiffs offered any explanation about why Asinor's claim concerning the purportedly prolonged retention of his property would involve MPD's policies and practices for dispersing protests. "Each claim relies on an independent set of facts that would require independent proof[,]" *Simmons v. District of Columbia*, 750 F. Supp. 2d 36, 41 (D.D.C. 2010), and supplemental jurisdiction would not be appropriate. Plaintiffs also argue that "facts about the August 29 incident may have shaped MPD's response to the August 30 incident and help explain what, if any, crimes it was investigating when it refused to return Mr. Asinor's phone." Pls.' Opp'n at 34. This essentially amounts to speculation that there may be some background factual overlap between these two sets of claims, which is insufficient to provide a basis for supplemental jurisdiction. "State law

claims that only 'relate generally' to federal claims through a broader dispute and do not share any operative facts are not properly taken up via supplemental jurisdiction." *Osei v. Std. Chtd. Bank*, Civil Action No. 19-1644, 2020 U.S. Dist. LEXIS 45869, at *8 (D.D.C. March 17, 2020); *see also Smith v. Reynolds & Assocs.*, Civil Action No. 23-1582, 2024 U.S. Dist. LEXIS 117059 (D.D.C. March 3, 2024) (finding no subject matter jurisdiction over a plaintiff's state law claims that were only related to federal claims because they pertained to the plaintiff's employment and separation from the defendant-employer).

Second, Plaintiffs argue that Asinor's "injuries implicate facts from each incident." Pls.' Opp'n at 34. Specifically, Plaintiffs contend that it is "clear (or at a minimum plausible)" that Asinor's "inability to attend and cover protests" arose from both the August 29 incident and from "the seizure of his property and attendant economic harms that began on August 30." *Id.* at 34–35. As an initial matter, this statement is not supported by the allegations in the Complaint. In the Complaint, Plaintiffs allege that "MPD's attacks on Mr. Asinor on August 29 caused Mr. Asinor significant psychological distress" and, in the next paragraph, that "[t]o this day, Mr. Asinor continues to feel jittery and anxious around loud noises, such as fireworks" and that he "feels an aversion to Black Lives Matter Plaza." Compl. ¶¶ 97–98. Plaintiffs go on to allege that "the lingering trauma from the events of August 29, 2020, contributed to [Asinor's] decision to stop attending and covering protests a few months later." *Id.* ¶ 98. In a separate paragraph, Plaintiffs allege that "[a]s a result of MPD's retention of his property following his August 31 arrest, Mr. Asinor was forced to purchase new equipment, including a new camera, cell phone, SIM card, and other cell phone accessories. He also lost access to old text messages and old photographs and records, including call logs and notes." *Id.* ¶ 99. It is clear from these allegations that Asinor alleges separate injuries: psychological distress and trauma arising from

the events of August 29, and the financial cost and loss of access to his property arising from the events of August 31. Plaintiffs now argue that these allegations actually mean that Asinor was injured in the same way by the events of August 29 and August 30–31, but that is simply not what the Complaint says. "It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss." *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 87 n.3 (D.D.C. 2016) (quoting *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 D.D.C. 2014)).

Regardless, Plaintiffs' alleged injuries are clearly distinguishable from the types of injuries that have been found to provide a basis for supplemental jurisdiction. In *Feigler v. Tidex, Inc.*, 826 F.2d 1435 (5th Cir. 1987), the plaintiff injured his back in two separate incidents two months apart, *id.* at 1437. The court's analysis concerned pendant-party jurisdiction; the court found that, because the plaintiff's "assertion of a back injury is at the core of both the state law and federal claims," there was a sufficient relationship between the claims to support pendent-party jurisdiction. *Id.* The "extent of the injury resulting from" the second accident "could not be determined without a concomitant decision about the extent of the injury" from the first incident; the court found that "[t]his single-injury syndrome provides the common nucleus of operative fact." *Id.* at 1439. Likewise, in *Wiley v. Fleet Farm LLC*, Civil Action No. 24-4135, 2025 U.S. Dist. LEXIS 175290 (D. Minn. Sept. 9, 2025), the court explained that "when 'several causes combine' to create a single, indivisible injury, 'supplemental jurisdiction is properly exercised,'" *id.* at *24.

Here, Plaintiffs have not identified any such single, indivisible injury that Asinor allegedly suffered. Plaintiffs have not explained, and certainly not alleged in the Complaint, that the purported use of force by MPD on August 29, 2020, and the allegedly prolonged retention of

Asinor's property after his arrest on a different day, caused a single injury such that the extent of Asinor's injuries from the retention of his property "could not be determined without a concomitant decision about the extent of" his psychological distress arising out of the use of force on August 29, *see Feigler*, 826 F.2d at 1437. Accordingly, Claims 1, 2, and 3 do not share a common nucleus of operative fact with Asinor's Fourth Amendment claim. The Court does not have jurisdiction over these claims, and they should be dismissed.

## II. <u>Plaintiffs Are Wrong That They Do Not Need To Allege Facts Showing That Other Examples of the Purported Custom or Practice Occurring Are "Widespread."</u>

As the District explained in its Motion, adequately pleading a custom or practice claim requires Plaintiffs to allege facts showing a "widespread practice." *See* Def.'s Mot. at 9. Even at the pleading stage, this is a "high threshold." *Univ. Legal Servs., Inc. v. District of Columbia*, Civil Action No. 18-0301, 2019 WL 1430045, at *9 (D.D.C. Mar. 30, 2019) (Jackson, J.) (finding that the "examples" provided by the plaintiff were insufficient). While Plaintiffs criticize the District's recitation of the proper standard, *see* Pls.' Opp'n at 10–12, the substance of that criticism is not entirely clear.

Plaintiffs seem to be arguing that for the last 30 years courts in this District have been misreading *Carter v. District of Columbia*, 795 F.2d 116 (D.C. Cir. 1986), although apparently no one has noticed until now. *See* Pls.' Opp'n at 10–12. In *Carter*, the D.C. Circuit affirmed the entry of a directed verdict on the plaintiffs' custom or practice claim because the "specific instances" identified by the plaintiffs were "too scattered and lacking in detail" to meet their burden. 795 F.2d at 124. The court concluded by contrasting the plaintiffs' evidence with the "concentrated, fully packed, precisely delineated scenarios" presented in two other cases. *Id*. at 125. Since then, many courts in this District have used "concentrated, fully packed, precisely delineated scenarios" to describe the relevant standard at the pleading stage for a custom or

practice claim.[1] And that makes sense. While a plaintiff's evidentiary burden at the pleading stage is obviously different from his burden at trial, evidentiary burden has nothing to do with the underlying legal standard that is applied.

Despite Plaintiffs' inability to cite a single case that discusses, let alone agrees with, their theory that *Carter* has been misapplied for decades, they argue that *Frederick Douglass Foundation v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023), "confirms" that courts have been misapplying *Carter*. Pls.' Opp'n at 11–12. Of course, the D.C. Circuit in *Frederick Douglass* never mentions *Carter* nor does it even discuss the pleading standard for custom or practice claims in the four sentences it spends explaining why the plaintiffs had met their pleading burden. 82 F.4th at 1149. As such, it is not surprising that courts have continued to use "concentrated, fully packed, precisely delineated scenarios" to describe a plaintiff's pleading burden in the years after *Frederick Douglass*. *See supra* at 6 n.1.[2] Further, given that Plaintiffs concede that they must identify "facially similar" examples that are "persistent and widespread," Pls.' Opp'n at 10–11, it is unclear how the standard for which Plaintiffs advocate would

---

[1] *See, e.g.*, *Manyan v. District of Columbia*, Civil Action No. 23-3192, 2025 WL 315140, at *6 (D.D.C. Jan. 28, 2025); *Noble v. District of Columbia*, 725 F. Supp. 3d 32, 42 (D.D.C. 2024); *Hardrick v. District of Columbia*, Civil Action No. 23-2151, 2024 WL 4286053, at *6 (D.D.C. Sept. 25, 2024); *Hernandez v. District of Columbia*, Civil Action No. 21-01374, 2023 WL 2525004, at *4 (D.D.C. Mar. 15, 2023); *Univ. Legal Servs., Inc.*, 2019 WL 1430045, at *9 (D.D.C. Mar. 30, 2019); *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 168 (D.D.C. 2018); *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018); *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011).

[2] Plaintiffs also cite *Leach v. District of Columbia*, Civil Action No. 19-947, 2022 WL 1316436, at *13 (D.D.C. May 3, 2022) (APM), as supporting their theory, *see* Pls.' Opp'n at 9. But this Court's omission in *Leach* of the phrase "concentrated, fully packed, precisely delineated scenarios" can hardly be read as a *sub silentio* rejection of the use of that phrase to describe a plaintiff's burden at the pleading stage. In fact, in *Leach*, this Court cited favorably *Egudu v. District of Columbia*, 72 F. Supp. 3d 24 (D.D.C. 2014), and *Egudu*, in turn, relies on *Page*, 999 F. Supp. 2d at 284, an oft-cited opinion that relies on the *Carter* standard.

materially differ from a standard requiring them to allege "concentrated, fully packed, precisely delineated scenarios."

Plaintiffs also err regarding the proper standard of review when they argue that the Court is limited to considering the absolute number of "concentrated, fully packed, precisely delineated scenarios" alleged by a plaintiff and cannot consider the number of alleged examples relative to the number of potential examples. *See* Pls.' Opp'n at 24.[3] But, again, Plaintiffs cite no authority for that proposition. That is because there is none. Whether a practice is "widespread" and "pervasive" obviously depends on the context in which it occurs, as illustrated in *Givens v. Bowser*.[4] There, the plaintiff claimed that the District had miscalculated her Medicaid eligibility and that the District had a custom or practice of doing so, alleging that 40 other individuals suffered similar violations. *Id*. at *7. In dismissing her custom or practice claim, the court explained, given that several hundred thousand persons were enrolled in Medicaid in the District during the relevant period, "[s]ome routine error rate in administration of these complex policies is to be expected." *Id*. Accordingly, "[t]he fact that 40 persons in the District may have

---

3 Plaintiffs again misread *Frederick Douglass* when they contend that the D.C. Circuit found a custom or practice based on a single example. Pls.' Opp'n at 25. There, the alleged custom or practice was *not* based on MPD enforcing the anti-defacement law on a single occasion, as argued by Plaintiffs. The custom or practice claim was based on the allegedly "thousands" of occasions when MPD purportedly failed to enforce the anti-defacement law. *Frederick Douglass*, 82 F.4th at 1149. When read in context, those plaintiffs essentially alleged that (a) there was significant protest activity in the District in the summer of 2020 and (b) MPD failed to enforce the anti-defacement law as a general matter at those protests, *i.e.*, the lack of enforcement approached 100%. *Frederick Douglass* therefore supports the District's position that whether the alleged custom or practice is "pervasive" necessarily depends on how often it actually occurs relative to how often it could potentially occur.

4 Civil Action No. 20-307, 2021 WL 3507881, at *7 (D.D.C. May 3, 2021), report and recommendation adopted, 2022 WL 4598576 (D.D.C. Sept. 30, 2022), aff'd in part, vacated in part, remanded, 111 F.4th 117 (D.C. Cir. 2024), and aff'd in part, vacated in part, remanded, 111 F.4th 117 (D.C. Cir. 2024).

experienced calculation errors or delays" was "a rather unremarkable proposition that does little in the way of plausibly establishing that the District has an official policy or practice" of making the alleged errors and, as a result, allowing a claim for municipal liability to proceed would have been "an unduly harsh result." *Id*.

So too here. When assessing whether Plaintiffs have met the "high threshold" necessary to allege the existence of a custom or practice, the Court should consider the context of Plaintiffs' alleged comparator evidence—namely, whether a few dozen errors establishes a "pervasive" practice when they occurred *in a system that has hundreds of thousands of data points each year*. They do not; Plaintiffs cannot meet their burden; and their Fourth Amendment claim should be dismissed accordingly.

## III. <u>Plaintiffs Are Wrong That Their Alleged Custom or Practice Is *Not* Limited to Situations Where Individuals Requested Their Property Back from MPD.</u>

As Plaintiffs acknowledge, the alleged examples of the custom or practice must be sufficiently similar to their own experiences. *See* Pls.' Opp'n at 11. In other words, it is not enough for Plaintiffs and other individuals to have suffered the same injury, *i.e.*, loss of property at the hands of MPD; rather, the same custom or practice that caused Plaintiffs' injuries must have also caused the injuries of others. Here, the gravamen of Plaintiffs' claims against the District is that, while the District rightfully obtained their property initially, the District wrongfully "refused" to give it back after (1) the District no longer had a reason to keep it *and* (2) Plaintiffs asked for it back. *See, e.g.*, Second Am. Compl. ¶¶ 73–78, 81. Alleging a request for the return of property is undisputably a necessary element of Plaintiffs' conversion claim. *See E.M. v. Shady Grove Reproductive Science Center*, Civil Action No. 24-956, 2025 WL 1707695, at *3 (D.D.C. June 18, 2025) (explaining that when the initial taking was lawful a conversion claim requires "a demand for the return of the property . . . to make the possession

unlawful and to demonstrate its adverse nature"). And, as explained below, it is also necessary for Plaintiffs' Fourth Amendment claim. Accordingly, the other purported examples of the custom or practice at issue here must also involve requests for the return of property.

Plaintiffs, however, argue that their Fourth Amendment claim does not require a request for the return of property and therefore it is of no moment whether their examples involve such requests. *See* Pls.' Opp'n at 19. Plaintiffs are incorrect. The only support for their theory is the absence of any discussion of this point in *Asinor v. District of Columbia*, 111 F.4th 1249 (D.C. Cir. 2024). But *Asinor* concerned only whether the District's ongoing possession of Plaintiffs' property must be reasonable under the Fourth Amendment. *Id*. at 1253–54. And, because Plaintiffs had alleged that they requested the return of their property, the Court had no reason to discuss whether a request was necessary. But the Court's analysis of whether continued retention of property must be reasonable demonstrates that Plaintiffs' Fourth Amendment claim essentially mirrors their conversion claim, which requires a request for return.

To be sure, in assessing whether the Fourth Amendment required ongoing possession to be reasonable, the D.C. Circuit looked to common law. "And common law authorized actions for damages and recovery of property that was lawfully taken, but then unlawfully possessed." *Id*. at 1253. Although the D.C. Circuit had no reason to go further than that acknowledgement, it is also the case at common law that such actions required the owner to first demand the return of his property. *See* 3 W. Blackstone, *Commentaries on the Laws of England* 93 (1768) ("This action, of trover and conversion, was in its original an action of trespass upon the case, for recovery of damages against such person as had found another's goods, and refused to deliver them on demand, but converted them to his own use; from which finding and converting it is called an action of trover and conversion."); J.B. Ames, *The History of Trover*, 11 Harv. L. Rev.

277, 384 (1898) ("If, however, the original taking was not adverse . . . a subsequent adverse holding, as by refusing to give up the goods to the owner on request, made the taker . . . a trespasser *ab initio*.").[5] If that were not the case, and Plaintiffs were correct that the government has an "affirmative duty" to return the property, *see* Pls.' Opp'n at 19, a whole host of practical questions would arise. For example, what efforts must the government make to return the property? Must it attempt to hand-deliver it? Mail it back? Is notification enough? And notification in what form? Given the extreme volume of property that MPD handles each year, the answers to those questions could have enormous consequences for the District. Consistent with *Asinor*'s focus on common law as being instructive of the contours of the right in question, this Court should find that, as alleged by Plaintiffs, a request for the return of their property is necessary for their Fourth Amendment claim just as it is necessary for their conversion claim. As a result, in order to be sufficiently similar to Plaintiffs' claim, the alleged other examples of the custom or practice on which their *Monell* claim rests must, at a minimum, also involve requests for the return of property.

## IV. <u>Plaintiffs Are Wrong That the Other Purported Examples of Their Alleged Custom or Practice Are Factually Similar to Their Own Claims.</u>

As explained in the District's motion, Plaintiffs' effort to establish a custom or practice fails because their alleged examples are too factually dissimilar to their own experiences and because, even if they were sufficiently similar, they are too few in number to plausibly establish

---

5 *See also Condrey v. SunTrust Bank of Georgia*, 429 F.3d 556, 568 (5th Cir. 2005) (noting that conversion under Georgia law "mandates that a party unequivocally demand his property be returned"); *Stuart & Sons, L.P. v. Curtis Pub. Co*., 456 F. Supp. 2d 336, 344 (D. Conn. 2006) (explaining that, under Connecticut law, "where the original possession is authorized, but becomes wrongful when the property is detained without authorization, a conversion does not occur until the possessor refuses to return the property on demand").

a widespread and pervasive practice, given the total number of pieces of property that MPD handles each year.

First, as explained above, because Plaintiffs' Fourth Amendment claim requires that the property owner have requested his property back, the Court should disregard any alleged examples that do not clearly involve requests for return. With regard to the unidentified 200 individuals who were purportedly arrested during the 2017 Presidential Inauguration, *see* Compl. ¶ 83(i), Plaintiffs fail to identify any facts alleged in the Complaint that would allow the Court to conclude that any of those 200 individuals had experiences sufficiently similar to their own experiences, including whether any of those individuals made requests for the return of their property. If Plaintiffs were to rely on the bare allegation that "many" individuals other than themselves had the same experience, that conclusory allegation would fail to establish a custom or practice because it would effectively be a regurgitation of the standard, *i.e.*, it would amount to a legal conclusion. *See Givens*, 2021 WL 3507881, at *7. Plaintiffs' reliance on those unidentified individuals who were purportedly arrested during the 2017 Presidential Inauguration therefore amounts to nothing more than a legal conclusion.[6] As a result, Plaintiffs have alleged, at most, nine examples of MPD refusing to return property upon request over a six-year period (one in 2015; two in 2017; one in 2019; four in 2020; one in 2021). *See* Compl. ¶ 83.

Of those nine examples, the Court should disregard the ones that do not involve MPD "refusing" to return the property upon request. In arguing otherwise, Plaintiffs appear to miss

6 Plaintiffs make no meaningful attempt to explain why their reliance on the Office of Police Complaints report, *PBC Policy Report #19-4, Handling Property*, includes sufficiently similar examples of the alleged custom or practice. Pls.' Opp'n at 24. And, while Plaintiffs note that the District did not address the article in *The Atlantic* that they cite in their Complaint, *id.*, that is because the article focuses on the NYPD and, as to MPD, it does not discuss any examples, with any specificity, of MPD refusing to return property.

the point. *See* Pls.' Opp'n at 20–21. The District's argument was not that "affirmative, intentional conduct" is *required* for ongoing retention to violate the Fourth Amendment. *See id.* at 20. The District's argument was that the custom or practice *by Plaintiffs* involves intentional conduct on the part of MPD, therefore, the *alleged* comparator examples must also involve intentional conduct. *See* Def.'s Mot. at 13–14. Put another way, whether MPD has a custom or practice of failing to adequately track and store property, which then leads to its loss, would involve entirely difference evidence from whether MPD has a custom or practice of refusing to return property that it knows it has. That means that Plaintiffs' universe of alleged examples falls from, at most, nine to seven. *See* Compl. ¶ 83.

And, as to six of those seven remaining examples, *id*. ¶¶ 83(c)–(h), as explained in the District's Motion, *see* Def.'s Mot. at 14–15, the lack of detail surrounding what purportedly happened renders them too vague to support the finding of an alleged custom or practice. Plaintiffs appear to misapprehend the District's reason for analogizing those allegations to allegations made on information and belief. *See* Pls.' Opp'n at 24. The District's point was that the lack of specificity in those allegations could not be remedied by asserting that they were made on information and belief. Given that Plaintiffs concede that those allegations are not made on information and belief, and for that reason, Plaintiffs could have presumably included additional details from which it could be determined that those examples are sufficiently similar to Plaintiffs' experiences (if they indeed are), the Court should disregard those six examples as too vague.

Finally, Plaintiffs attack a strawman in arguing that "a custom does not require a specific statistical target." Pls.' Opp'n at 24. The District did not argue that there was a magic number that needed to be alleged. Def.'s Mot. at 12–13. The District argued that whether an alleged

custom or practice rises to the level of being "widespread" and "pervasive" depends on how often the custom or practice allegedly occurs compared to how often it could potentially occur. *Id.*; *see also Givens*, 2021 WL 3507881, at *7. Here, Plaintiffs do not dispute that, during the time period covered by their alleged examples, 2015–2021, MPD handled several hundred thousand pieces of property. *See* Pls.' Opp'n at 24–25. Plaintiffs have alleged no facts that could plausibly support a finding that MPD in a significant percentage of cases refused to return property upon request when there was no longer a need to retain the property—let alone that such a practice was "widespread" and "pervasive."

## V. If the Fourth Amendment Claim Is Dismissed, the Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims.

In their motion, the District argued that, if the Court dismisses Plaintiffs' Fourth Amendment claim, the Court should decline to exercise supplemental jurisdiction over the remaining claims. *See* Def. Mem. at 17. In response, Plaintiffs argue only that the Court should not dismiss Plaintiffs' Fourth Amendment claim. Pls.' Opp'n at 33–34. By not addressing the District's other arguments, Plaintiffs have essentially conceded that, if the Court dismisses Plaintiffs' Fourth Amendment claim, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Lockhart v. Coastal Int'l Sec.*, 905 F. Supp. 2d 105, 118 (D.D.C. 2012) ("The law is also well-settled in this jurisdiction that 'when a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.'" (internal quotation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Date: December 19, 2025. Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTION [1019878]
Assistant Chief, Equity Section

*/s/ Richard P. Sobiecki*
RICHARD P. SOBIECKI [500163]
HELEN M. RAVE [90003876]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 805-7512
Email: richard.sobiecki@dc.gov

*Counsel for Defendants*